UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Justin Russell,

      Plaintiff,

      v.                            Civil Action No. 5:15-cv-126-gwc-jmc

Andrew Pallito, Cynthia Mason,
Richard Bilodeau, and Lisa Menard,

      Defendants.


## REPORT AND RECOMMENDATION
(Docs. 30, 33, 41)

Plaintiff Justin Russell, a Muslim prisoner under the supervision of the Vermont

Department of Corrections (DOC), brings this action under 42 U.S.C. § 1983, on behalf

of himself and a proposed class of Muslim prisoners, against Defendants DOC

Commissioners Andrew Pallito and Lisa Menard, and DOC employees Richard Bilodeau

and Cynthia Mason.  Plaintiff alleges violations of class members' constitutional right to

a Halal diet (described below) and rights under the Religious Land Use and

Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 (Doc. 61 at 11–13); and

violations of his own rights under the First Amendment "to petition for redress of

grievances without fear of reprisal," and under the Fourteenth Amendment to procedural

due process regarding prison disciplinary proceedings (*id.* at 14–15).  Plaintiff seeks

compensatory damages, injunctive and declaratory relief, attorney's fees, and costs of suit.  (*Id.* at 15.)  He also asks the Court to "expunge his disciplinary record with respect to all matter[s] as to which Mr. Bilodeau served as hearing officer."  (*Id.* at 16.)

Plaintiff filed his initial Complaint on June 12, 2015.  (Doc. 1.)  On December 2, 2015, he filed an Amended Complaint adding Lisa Menard, the current Commissioner of the DOC, as a Defendant.  (Doc. 21.)  Defendant Andrew Pallito, the Commissioner of the DOC until September 2015, then filed his Answer to the Amended Complaint. (Doc. 23.)  The Court has granted Plaintiff's April 5, 2016 Motion to Amend Amended Complaint (Doc. 48), thereby making the "Second Amended Complaint - Class Action" (Doc. 61) the operative complaint.  Therein, Plaintiff states that the proposed class consists of "all Muslim prisoners in the custody of the Vermont Department of Corrections, from September, 2014 to the present, who have requested Halal diets." (*Id.* at 2.)

Three motions are before the Court: Defendant Menard's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 30), Defendant Pallito's Motion for Judgment on the Pleadings pursuant to Rule 12(c) (Doc. 33), and Plaintiff's Motion to Certify Class Action (Doc. 41).  Although Defendants' Motions were filed prior to the now-operative Second Amended Complaint, the Court's analysis is unaffected, given that the Second Amended Complaint does not

"add new defendants or causes of action."  *See Claes v. Boyce Thompson Inst. for Plant Research*, 88 F. Supp. 3d 121, 125 (N.D.N.Y. 2015).[1]

For the reasons stated below, I recommend that the Court GRANT Defendant Pallito's Motion (Doc. 33), and dismiss the claims against him.  I further recommend that the Court GRANT Defendant Menard's Motion in part and DENY it in part (Doc. 30), permitting only the claims for injunctive and declaratory relief to proceed against her. Finally, should the Court adopt these recommendations, I recommend that the Court DENY Plaintiff's Motion to Certify Class Action (Doc. 41) without prejudice, as premature.

## Factual Background

For purposes of deciding Defendants' Motions, the Court must accept as true the following factual allegations contained in Plaintiff's Second Amended Complaint, and must draw all inferences in favor of Plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." (quoting *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004))).

---

[1]  For purposes of ruling on the pending Motions, the Second Amended Complaint's allegations "are deemed denied."  *Montalvo v. Hutchinson*, No. 90 Civ. 0299 (VLB), 1995 WL 912452, at *1 (S.D.N.Y. Feb. 9, 1995).  Also, the Second Amended Complaint relates back to the date of the initial Complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B) (relation back of amendments); Fed. R. Civ. P. 25(d) (automatic substitution of successor to officer).

## I.     Religious Diet

Plaintiff is a "religiously[]observant Muslim."  (Doc. 61 at 3.)  He has been

incarcerated at several different Vermont prisons during the relevant period, as discussed

below.  From January to March 2015 and November 2015 until February 2016, he was

released on parole but was later returned to custody.[2]  (*Id.* at 1–2; Doc. 52-1 at 3.)

On September 20, 2014, while incarcerated at the Northwest State Correctional

Facility (NWSCF) in Swanton, Vermont, Plaintiff notified NWSCF administrators that

"he was requesting Halal meals" consistent with "the dictates of his faith, and his

sincerely held religious beliefs."  (Doc. 61 at 3.)  His request was approved 10 days later.

(*Id.*)

According to Plaintiff, eating a Halal diet is a fundamental tenet of Islam, and "[a]

Muslim who fails to eat a Halal diet becomes impure, and may not find acceptance before

Allah."  (*Id.*)  Specifically, Plaintiff states that the Quran forbids Muslims from

consuming certain foods, referred to as "Haram," including for example "pork, blood, or

alcohol."  (*Id.*)  Plaintiff explains that Jewish Kosher diets are similar but not the same as

Halal diets.  (*Id.* at 3–4.)  For example, while alcohol is Haram to Muslims, it may be

---

[2]  In response to the Court's Order dated March 29, 2016 (Doc. 47), Defendants provided the Declaration of Douglas Densmore (Doc. 52-1), which is also cited in Plaintiff's Supplemental Memorandum (Doc. 54 at 2).  The Declaration is referenced here and considered for the limited purpose of determining subject-matter jurisdiction.  A court "may refer to evidence outside the pleadings" to determine whether subject-matter jurisdiction exists.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject[-]matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."); *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (stating lack of subject-matter jurisdiction "may also be raised on a Rule 12(c) motion for judgment on the pleadings"); *cf. Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("[I]t makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject[-]matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).").

permitted under Kosher restrictions; and different faiths perform animal slaughter

"according to different rituals." (*Id.* at 4.)

On October 7, 2014, Plaintiff was transferred to the Northern State Correctional

Facility (NSCF) in Newport, Vermont. (*Id.* at 5.) He received a Halal diet for the first

six days of his confinement there. (*Id.*) Then, at lunchtime on October 13, "he requested

a Halal meal," but Defendant Correctional Officer (CO) Cynthia Mason told him he

could not receive it because his name "was not on the special meals list." (*Id.*) Plaintiff

told Mason that his request for Halal meals had been approved at NWSCF and he had

received Halal meals at NSCF for the prior six days. (*Id.*) He asked for a Halal meal,

suggesting that Mason call NWSCF to confirm the approval. (*Id.*) Mason refused and

gave Plaintiff three choices: "take a regular tray, eat a bagged lunch, or go hungry." (*Id.*)

Thinking the bagged lunch option was not Halal, Plaintiff decided to take the tray lunch.

(*Id.*)

Because Mason denied his request for a Halal meal, Plaintiff filed a grievance

against her. (*Id.*) The next day, when he met with Mason to process the grievance, she

told Plaintiff "for the first time" that the bagged lunch option had included "a peanut

butter and jelly sandwich, chips[,] and an apple, and that it was Halal." (*Id.* at 6.)

According to Plaintiff, however, peanut butter is not necessarily Halal. (*Id.*) In any

event, the bagged lunch was not an acceptable option for Plaintiff because he had a

peanut butter allergy. (*Id.*) When Plaintiff told Mason this, Mason "yell[ed] that he had

never told medical staff that he had a peanut allergy." (*Id.*) She warned Plaintiff that if

he was lying about the allergy, "he would be reported." (*Id.*) When she called the

5

medical staff to confirm the allergy, they informed her that Plaintiff had not notified them about it. (*Id.*) Indeed, Plaintiff had not notified medical personnel about his peanut allergy because he had been told that NWSCF was peanut free and he assumed NSCF was also peanut free. (*Id.*) Still, Mason filed a disciplinary report, charging Plaintiff with "lying to a correctional officer." (*Id.*)

Correctional Facility Shift Supervisor (CFSS) Richard Bilodeau heard the charges against Plaintiff and refused to let him submit to an allergy test. (*Id.*) Subsequently, Plaintiff was sentenced to "five days in 'administrative segregation' or solitary confinement." (*Id.*) When he arrived in solitary confinement, "Mason sent [him] a bagged lunch containing a peanut butter and jelly sandwich," and Plaintiff "went hungry that day." (*Id.* at 7.)

From October 13 to 23, 2014, Plaintiff "was denied Halal meals." (*Id.*) Then, on October 23, his request for Halal meals at NSCF, which he had submitted before being sentenced to solitary confinement, was approved. (*Id.*)

Plaintiff "found foreign objects in his food" after he filed the grievance against CO Mason, though no other prisoner found objects in their meals. (*Id.*) Plaintiff complained to Mason, and Mason smiled and responded: "You've been really unlucky lately." (*Id.*) According to Plaintiff, Mason "arranged for kitchen staff to tamper with [his] meals in retaliation for the grievance he had filed against her." (*Id.*)

In November 2014, Plaintiff learned from another Muslim inmate that NSCF was washing the Halal food trays with the regular trays. (*Id.*) Plaintiff confirmed this by watching the kitchen workers after a meal and observing "the distinctively colored Halal

6

trays being loaded into the dishwasher together with the regular trays." (*Id.*)  According to Plaintiff, washing all the trays together may render the Halal trays "Haram" (forbidden) and consequently the food carried on those trays would also be "Haram." (*Id.*)

In December 2014, Commissioner Pallito implemented a new policy, under which prisoners approved for Halal meals at NSCF started to receive "prepackaged meals that were clearly labeled 'Kosher.'" (*Id.* at 3.)  "[T]here are more than 40 prisoners in DOC custody who, like Mr. Russell, requested Halal meals but who have instead been provided with Kosher prepackaged food." (*Id.* at 4.)  As a result of the policy change, many have "given up trying to eat in accordance with the dictates of their faith," and have decided to eat the food given to the general prison population. (*Id.*)  Plaintiff was upset that he was denied a Halal diet, and he started eating only fruits and vegetables, causing him to lose weight. (*Id.* at 8.)

On January 5, 2015, Plaintiff was transferred back to NWSCF, where prisoners still received Halal diets. (*Id.*)  While there, Plaintiff "began eating well and gained back the weight he had lost." (*Id.*)  A few weeks later, Plaintiff was released on supervision, but later "was returned to the custody of the [DOC]." (*Id.*)

On returning to custody in March 2015, he was first placed at NWSCF, where he discovered that prisoners now were receiving prepackaged meals that were labeled "Kosher," and not the Halal meals that the facility had once served. (*Id.*)  Soon thereafter, Plaintiff was transferred back to NSCF, where he and Muslim prisoners continued to receive the prepackaged Kosher meals. (*Id.*)  Plaintiff alleges that, while

7

this policy of providing Kosher meals instead of Halal had been implemented by Commissioner Pallito, Menard continued it.  (*Id.*)

On March 12, 2015, Plaintiff had an allergic reaction to peanuts contained in one of the prepackaged Kosher meals.  (*Id.*)  After medical personnel confirmed the allergy with a test, Plaintiff was put on a peanut-free diet.  (*Id.* at 8–9.)

## II.    Retaliation

Plaintiff alleges he was retaliated against due to his filing of grievances and this lawsuit.  (*Id.* at 9.)  Specifically, Plaintiff claims that in March 2015 he was denied access to a Christian religious service at the prison because he had filed grievances.  (*Id.*)  He wanted to worship but was told that he had been disruptive and would be barred from the services.  (*Id.*)  On May 19, 2015, Plaintiff was transferred to Southeast State Correctional Facility (SSCF), where "he experienced no issues related to the conditions of his confinement," though he received meals that "were only purportedly Halal."  (*Id.*)

After filing this suit on June 12, 2015, and naming Mason and Bilodeau as Defendants, Plaintiff was transferred to NSCF despite his request to be held at NWSCF. (*Id.*)  He grieved the transfer but the grievance was denied on the grounds that SSCF was now a "minimum security" facility and Plaintiff "was disqualified from being housed there."  (*Id.*)

Plaintiff claims Mason and Bilodeau retaliated against him in multiple ways during Ramadan (June 17 through July 17, 2015), a holiday that requires Muslims to fast from sunrise to sunset each day.  (*Id.* at 9–10.)  Because it was the solstice, Muslim prisoners could eat only between approximately 8:30 p.m. and 3:45 a.m.  (*Id.* at 10.)

8

Plaintiff was given peanut butter for breakfast on three different occasions. (*Id.*) The first time he received peanut butter, he had to rush to find other food, in order to avoid going the next 16 hours without breakfast. (*Id.*) He spoke with Mason, the "food service supervisor" at NCSF, about whether she had received his "notice of medical diet," and she claimed she had not. (*Id.*) That same day, Plaintiff gave a copy of his notice to "C.O. McQueen," who "passed it along to" Mason. (*Id.*) After he was given peanut butter a second time, Plaintiff filed a grievance. (*Id.*) Still, he received peanut butter for breakfast a third time. (*Id.*) Plaintiff claims that the DOC recognized "this should not have happened, yet never took any action in response to the situation." (*Id.*)

On July 16, 2015—still Ramadan—despite Plaintiff having requested that "guards" wake him in time for his Ramadan meal, Plaintiff was not woken and thus "was forced to go 24 hours without eating." (*Id.*)

## III.    Prison Disciplinary Proceedings

On July 29, 2015, prison officials "listened in on" a telephone call between Plaintiff and "a former NSCF inmate." (*Id.* at 11.) During the call, Plaintiff told the former inmate that he would "handle" a situation with a third inmate. (*Id.*) Based on this conversation, Plaintiff was charged with planning an assault. (*Id.*) Bilodeau served as the hearing officer for the charge, despite Plaintiff's objections. (*Id.*) Bilodeau found Plaintiff guilty and sentenced him to solitary confinement for 12 days. (*Id.*)

## Procedural History

On June 12, 2015, Plaintiff filed a Verified Complaint naming CFSS Bilodeau, CO Mason, and Commissioner Pallito as Defendants. (Doc. 1.) On December 2, 2015,

9

pursuant to a court order granting leave to amend (Doc. 19), Plaintiff filed an Amended

Complaint (Doc. 21), adding Commissioner Menard as a Defendant.  Pallito filed an

Answer to the Amended Complaint on December 14, 2015.  (Doc. 23.)

In January 2016, Defendants Menard and Pallito filed two Rule 12 motions:

Menard filed a Motion to Dismiss for Failure to State a Claim (Doc. 30), and Pallito filed

a Motion for Judgment on the Pleadings (Doc. 33).  On February 26 and March 1,

respectively, Plaintiff responded to these Motions.  (Docs. 38, 40.)  Both Defendants filed

Replies.  (Docs. 44, 45.)  Subsequently, the Court ordered further briefing on issues of

Article III standing and mootness, the Prison Litigation Reform Act (PLRA), and

compliance with Local Rule 23, which governs class-action complaints.  (Doc. 47 at 2–

5.)  The Court also requested clarification of Plaintiff's RLUIPA claim.  (*Id.* at 5.)  On

April 19, 2016, Defendants and Plaintiff submitted responsive Supplemental Memoranda.

(Doc. 52 (Menard, Pallito); Doc. 54 (Plaintiff).)

Following the Order for supplemental briefing, Plaintiff also filed a Motion to

Amend Amended Complaint (Doc. 48), which the two Defendants opposed (Doc. 56).

The Motion to Amend was granted (Doc. 60).

Finally, in early March 2016, Plaintiff filed a "Motion to Certify Class Action."

(Doc. 41.)  Defendants Pallito and Menard jointly filed an Opposition (Doc. 46), and

Plaintiff filed a Reply (Doc. 53).  The Court held a hearing on June 29, 2016 and took all

Motions under advisement.  (Doc. 59.)  The pending Motions are addressed below.

## Analysis

### I.    Procedural Requirements of Rule 12(b)(6) and Rule 12(c) Motions

As discussed above, Defendants Menard and Pallito have filed two separate

Motions: Menard moves to dismiss the suit against her under Federal Rule of Civil

Procedure 12(b)(6), while Pallito moves for a judgment on the pleadings pursuant to

Rule 12(c).  (Docs. 30, 33.)  "On a 12(c) motion, the court considers 'the complaint, the

answer, any written documents attached to them, and any matter of which the court can

take judicial notice for the factual background of the case.'"  *L-7 Designs, Inc. v. Old*

*Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d

418, 419 (2d Cir. 2009)).  "A complaint is [also] deemed to include any written

instrument attached to it as an exhibit, materials incorporated in it by reference, and

documents that, although not incorporated by reference, are integral to the complaint."

*Id.* (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)

(internal quotation marks omitted)).  Likewise, on a 12(b)(6) motion, "the Court may

consider documents attached as an exhibit [to the complaint] or incorporated by

reference, documents that are 'integral' to plaintiff's claims, even if not explicitly

incorporated by reference, and matters of which judicial notice may be taken."  *Thomas*

*v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)

(citations omitted).  In addition, "[t]he same standard applicable to [Rule] 12(b)(6)

motions to dismiss applies to [Rule] 12(c) motions for judgment on the pleadings."  *Bank*

*of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citing *Sheppard*

*v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).

To survive either a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination.  *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

## II.    Class Actions—Federal Rule of Civil Procedure 23 and Local Rule 23

Plaintiff's Second Amended Complaint asserts three counts on behalf of a proposed class of Muslim prisoners "who have requested Halal diets" and were in custody "from September[] 2014 to the present."  (Doc. 61 at 2.)  As a proposed class action, Plaintiff must comply with the following procedural rules.

Federal Rule of Civil Procedure 23 governs class-action lawsuits.  The rule sets forth the prerequisites for a class action; identifies the different types of class actions; outlines class certification and notice requirements; and provides other guidance on class-action proceedings, counsel, and attorney's fees.  Fed. R. Civ. P. 23.  For instance, under Rule 23(a), an individual seeking class certification must demonstrate that the class action satisfies the following prerequisites: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 23(a)(1)–(4); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008).

Local Rule 23 dictates additional requirements for class-action complaints in this district.  Together with certain formatting requirements, *see* L.R. 23(a), "[t]he complaint must contain . . . under a separate heading, titled 'Class Action Allegations,'" the following: "A reference to the portion of Fed. R. Civ. P. 23 under which the party claims the suit is properly maintainable as a class action."  *Id.* at 23(b)(1).  The rule also requires a "Class Justification," in which "[s]upporting allegations must comply with Fed. R. Civ. P. 23(a)."  *Id.* at 23(b)(2).

Notwithstanding these requirements, there is no "separate, court-created pleading standard for class actions . . . .  [T]he allegations in class action complaints should be

evaluated like any other pleadings in federal courts." 5 *Moore's Federal Practice – Civil* § 23.61 (Matthew Bender 3d ed.). Also, pleading standards are separate from the class certification requirements that a party must follow when moving to certify a class. *Id.* ("Pleading requirements are distinct from the requirements for certifying a case as a class action.").

Here, to the extent there is any remaining procedural deficiency in Plaintiff's Second Amended Complaint, that non-compliance is excused. *See Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 431 (D. Vt. 2009) ("Although the Court generally requires full compliance with its Local Rules, the Court may also excuse non-compliance where 'strict application of the local rules would lead to an unjust result.'" (quoting *Phoenix Glob. Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005))); *but cf. Esden v. Bank of Boston*, 5 F. Supp. 2d 214, 218–19 (D. Vt. 1998) (requiring party to amend deficient class-action complaint, under former Local Rule 23.1, before court would address question of class certification). Moreover, the Court may address Defendants' dispositive motions prior to resolving the class-certification motion. *See Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("'There is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss . . . simply because such a motion' precedes resolution of the issue of class certification." (quoting *Lorber v. Beebe*, 407 F. Supp. 279, 291 n.11 (S.D.N.Y. 1976))); *Boykin v. 1 Prospect Park ALF, LLC*, 993 F. Supp. 2d 264, 283 (E.D.N.Y. 2014).

### III.    Article III Standing

Defendants Menard and Pallito both argue that Plaintiff "failed to satisfy the basic requirement of standing required under Article III of the United States Constitution." (Doc. 30 at 4; Doc. 33 at 7.)[3]   According to Defendants, "Plaintiff did not assert a personal claim" against either of them; Plaintiff only asserted claims on behalf of an "undefined and uncertified" class of prisoners who allegedly were denied Halal diets. (Doc. 30 at 4; Doc. 33 at 7–8.)  Defendants further assert that Plaintiff's "only personal claim" is based on "allegations against [D]efendants Mason and Bil[o]deau" (Doc. 30 at 4–5; Doc. 33 at 8), and that these personal claims do not demonstrate that Menard or Pallito caused Plaintiff injury, or that redress of that purported injury is available (Doc. 30 at 5; Doc. 33 at 8–9).

Plaintiff responds that, "as a member of the proposed class, [he] is raising claims of his own."  (Doc. 38 at 3; *see also* Doc. 40 at 2 ("Mr. Russell, as proposed class representative, is also raising claims of his own.").)  He asserts that "[t]he Amended Complaint alleges that Defendant Pallito instituted and perpetuated a policy that deprived Muslim prisoners of their constitutionally protected right to receive Halal meals" (Doc. 40 at 2–3), and Defendant Menard "perpetuated" that same policy (Doc. 38 at 3). "[A]long with his fellow class members," Plaintiff claims that he too was deprived of his

---

[3]   Although Defendants seek dismissal for lack of standing pursuant to Rules 12(b)(6) and 12(c)—not Rule 12(b)(1)—the Second Circuit also has recognized that dismissal for lack of subject-matter jurisdiction pursuant to Rules 12(b)(6) and 12(c) is permissible.  *See Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir. 1994) ("'[D]ismissals for lack of standing may be made pursuant to [Rule] 12(b)(6) rather than 12(b)(1).'" (quoting *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993))); *United States ex rel. Phipps*, 152 F. Supp. 2d at 448 (noting lack of subject-matter jurisdiction "may also be raised on a Rule 12(c) motion").

right to Halal meals.  (Doc. 38 at 3; Doc. 40 at 3.)  That deprivation, he asserts, is a

"redressable injury-in-fact" caused by Pallito and Menard.  (Doc. 38 at 3; Doc. 40 at 3.)

      "Article III standing 'is the threshold question in every federal case, determining

the power of the court to entertain the suit.'"  *Pearl River Union Free Sch. Dist. v.*

*Duncan*, 56 F. Supp. 3d 339, 353 (S.D.N.Y. 2015) (quoting *Liberty Mut. Ins. Co. v.*

*Donegan*, 746 F.3d 497, 502 n.2 (2d Cir. 2014)).  "[S]tanding must exist at the *inception*

of a lawsuit," *Hirsch v. Qingdao Orien Commercial Equip. Co., Ltd.*, No. 12–CV–952

(RRM), 2015 WL 1014352, at *7 (E.D.N.Y. Mar. 6, 2015), and "a plaintiff must

establish standing for 'each claim and form of relief sought.'"  *New York Bankers Ass'n,*

*Inc. v. City of New York*, No. 13 Civ. 7212(KPF), 2014 WL 4435427, at *8 (S.D.N.Y.

Sept. 9, 2014) (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)).

That includes claims seeking equitable relief.  *Zielinski v. DeFreest*, No. 12 Civ.

1160(JPO), 2013 WL 4838833, at *15 (S.D.N.Y. Sept. 10, 2013).  "Thus, *with respect to*

*each asserted claim,* '[a] plaintiff must always have suffered a distinct and palpable

injury to [him]self.'"  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (first

alteration in original) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100

(1979)).

      The same principles apply to a named plaintiff in a class action: "A named

plaintiff may only represent absent class members if he personally has standing to litigate

his own claim."  *Salsitz v. Peltz*, 210 F.R.D. 95, 99 (S.D.N.Y. 2002).  The Supreme Court

stated:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (alteration in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).  "It is not enough that the conduct of which the plaintiff complains will injure *someone*.  The complaining party must also show that he is within the class of persons who will be concretely affected."  *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)).

A party seeking relief also must satisfy three other standing requirements: injury in fact, causation, and redressability.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Under the injury-in-fact element, Plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).  The causation element requires that the injury alleged be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Id.* (alterations in original) (quoting *Simon*, 426 U.S. at 41–42).  And redressability requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).  As for parties seeking injunctive relief, they must demonstrate that the alleged illegal conduct is causing "continuing, present adverse effects."  *Zielinski*, 2013 WL 4838833, at *16 (quoting

*O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  Similarly, "[a] plaintiff seeking

declaratory relief establishes standing by (1) identifying a specific injury he or she has

suffered and (2) demonstrating a likelihood that he or she will be similarly injured in the

future."  *Ford v. Reynolds*, 326 F. Supp. 2d 392, 404–05 (E.D.N.Y. 2004) (citing

*Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)), *aff'd*, 167 F. App'x 248 (2d Cir.

2006).

      Plaintiff's Second Amended Complaint presents three "Class Action Claims."

(Doc. 61 at 11–13.)  Count I, which is brought against all Defendants, is not *explicitly*

made personal to Plaintiff.  (*See id.* at 11–12.)  For example, Plaintiff claims that "the

Defendants named herein, acting under color of state law, violated *the class members'*

constitutional rights through the imposition of an official policy or custom that deprived

Muslim prisoners in their custody of their right to receive Halal meals."  (*Id.* at 12

(emphasis added).)  Similarly, Counts II and III, which seek injunctive and declaratory

relief against Defendant Menard, allege general violations of *class members'* rights to a

Halal diet.  (*Id.* at 12–13)  Plaintiff's *personal* claims—besides those expressly brought

against Mason and Bilodeau in Count IV (*see id.* at 14–15)—are absent from the Class

Action Claims in Counts I through III.

      Nevertheless, I conclude that in light of well-established pleading standards, the

Second Amended Complaint sufficiently alleges Plaintiff's Article III standing to bring

class-action claims on behalf of the proposed class.  *See Lujan*, 504 U.S. at 561 ("At the

pleading stage, general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations

embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))). The Second Amended Complaint makes it clear from the start that Plaintiff is bringing suit "on his own behalf and on behalf of a prospective class of plaintiffs . . . for past and prospective harms that *he and the class members have suffered* as a result of the Defendants' violation of their clearly established constitutional rights." (Doc. 61 at 1 (emphasis added).) The Complaint then continues to allege Plaintiff's personal standing. For instance, the "Class Action Allegations" section begins with a reference to Plaintiff's religion and request for a Halal diet. (*See id.* at 3.) That section also presents multiple factual allegations concerning Plaintiff's personal experience within the DOC, an experience shared by the 40-plus other prisoners "who, like Mr. Russell, requested Halal meals but who have instead been provided with Kosher pre[]packaged food." (*Id.* at 4.) Common sense dictates that Plaintiff's three class-action claims are personal to Plaintiff as well. *See Iqbal*, 556 U.S. at 679.

Plaintiff's allegations also satisfy the three standing requirements. First, the Court is able to discern a plausible "injury in fact" based on Plaintiff's allegations about his own experience being denied a Halal diet while incarcerated. Second, and without delving into whether or not Plaintiff has sufficiently pled the *personal involvement* of Pallito and Menard, *see infra* pp. 21–25, the Court can infer that Pallito and Menard may have caused or may be causing Plaintiff's injury in fact by allegedly implementing and perpetuating a new food policy. Third, a favorable ruling for Plaintiff in this case would redress the alleged constitutional violations by compensating Plaintiff for his purported

injury, halting any current violations of Halal dietary restrictions, and declaring the current DOC practice unlawful.

Lastly, Defendants' standing arguments are unavailing because Plaintiff's Second Amended Complaint provides Pallito and Menard with fair notice that Plaintiff shares the alleged injury—the deprivation of a Halal diet—for which he is seeking relief on behalf of the proposed class.  *See Lee v. Verizon*, No. 15-cv-523 (DLI)(PK), 2016 WL 737916, at *2 (E.D.N.Y. Feb. 23, 2016) ("Pleadings are to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005))); *see also Henry v. Urban Strategies Head Start*, No. 13-CV-4797 (MKB), 2013 WL 5537310, at *1 (E.D.N.Y. Oct. 7, 2013) ("A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.").  Construing the Second Amended Complaint "so as to do justice," Fed. R. Civ. P. 8(e), I conclude that Plaintiff has sufficiently pleaded Article III standing, as it relates both to him personally and to the proposed inmate class.

## IV.    Section 1983

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed

rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 569 (D. Vt. 2013) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

"Generally, 'state employment is . . . sufficient to render the defendant a state actor.'" *Millar v. Ojima*, 354 F. Supp. 2d 220, 226 (E.D.N.Y. 2005) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49–50. Defendant Menard does not address the "state actor" requirement, presumably conceding that she is a state actor given her role as current Commissioner of the DOC. Defendant Pallito "assumes, without conceding, that his employment as Commissioner of the [DOC] during the time frame pertinent to the Amended Complaint satisfies the so-called 'state action' or 'color of state law' requirement of the first element of a § 1983 claim." (Doc. 33 at 15.) Assuming the same, I proceed with the § 1983 analysis.

## V.    Personal Involvement

Defendants argue that any personal claims against Pallito and Menard should be dismissed because "they are improperly premised on *respondeat superior*." (Doc. 30

at 16; Doc. 33 at 15.)  They contend that the allegations against Pallito and Menard—that Pallito "approved and implemented a change in [DOC] policy that authorized prepackaged Kosher entrées to be served to Muslim inmates" (Doc. 33 at 16), and that "Menard continued the policy and practice" (Doc. 30 at 17)—fail to demonstrate supervisory liability under the third *Colon* factor (*id.* at 17–18; Doc. 33 at 16–17).  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Additionally, Pallito and Menard assert that there are no allegations supporting liability under the other four *Colon* factors. (Doc. 30 at 17; Doc. 33 at 16.)

In response, Plaintiff argues that Pallito was personally involved because he "'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'"  (Doc. 40 at 6 (quoting *Colon*, 58 F.3d at 873).)  Plaintiff also asserts that Menard was personally involved "by continuing the practice instituted by Defendant Pallito."  (Doc. 38 at 10.)  He states: "[Menard's] awareness of the practice, and failure to do anything to remedy it, constitutes direct involvement."  (*Id.*)  Plaintiff claims Menard was aware of the practice because this lawsuit was pending when she took over as Commissioner.  (*Id.*)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d at 873).  The Second Circuit held as follows:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the

> violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[4]  Additionally, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).

Plaintiff's sole factual allegation concerning Defendant Pallito does not permit the Court to infer Pallito's personal involvement.  Plaintiff alleges that, "[i]n December[] 2014, pursuant to a policy change approved and implemented by DOC Commissioner Andrew Pallito, Halal-approved prisoners in Newport began receiving prepackaged meals that were clearly labeled 'Kosher.'"  (Doc. 61 at 3; *see also id.* at 8 (repeating that practice "was instituted at the direction of Defendant Pallito").)  This allegation does not satisfy any *Colon* factor; it merely reflects a *respondeat superior* argument.  Nor do Plaintiff's few additional statements concerning Pallito satisfy *Colon*.  Plaintiff states that, "[b]y forcing Muslims to subsist on a Kosher diet, Andrew Pallito is denying them their clearly established right to a diet that conforms to the requirements of their religion"

---

[4] In *Grullon v. City of New Haven*, the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . , may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Grullon*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F. 3d 97, 117 (2d Cir. 2014) (declining to decide "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g.*, *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).

(*id.* at 4); and that, "[b]y failing to provide Mr. Russell and other Muslim prisoners . . . with a proper Halal diet, Andrew Pallito and Lisa Menard have deprived them of their proper sustenance, and diminished their connection to their Creator" (*id.*).  The Court need not accept these conclusory allegations as true.  "Conclusory allegations of a defendant's role in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement."  *Liner v. Fischer*, No. 11 Civ. 6711(PAC)(JLC), 2013 WL 4405539, at *4 (S.D.N.Y. Aug. 7, 2013).  Therefore, Plaintiff has failed to show Pallito's personal involvement in the alleged violations

        In reaching this conclusion, the Court does not consider various extra-pleading materials that Plaintiff and Defendant Pallito have attached to their filings.  Attached to his Motion for Judgment on the Pleadings, Pallito has provided the Court with DOC directives and a menu.  (*See* Docs. 33-1 (DOC directives and interim procedure), 33-2 ("Vermont Halal Menu").)  In response, Plaintiff attached letters from Pallito to Plaintiff.  (*See* Docs. 40-1, 40-2 (letters).)  However, Plaintiff urges the Court to "disregard these materials and afford the parties an opportunity to develop the record through discovery." (Doc. 40 at 6 n.4.)  Although at this stage the Court is permitted to take judicial notice of DOC regulations*, see Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations), the Court will not consider the letters and menu because those materials do not fit within established exceptions.  *See supra* p. 11; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 127 (W.D.N.Y. 2012).

Plaintiff also has failed to sufficiently plead Menard's personal involvement. Plaintiff alleges that upon his transfer back to NSCF, "[h]e and other Muslim prisoners were given a pre[]packaged Kosher diet in place of Halal.  This practice, which was instituted at the direction of Defendant Pallito, has continued since Defendant Menard assumed the position of Commissioner of Corrections in the Summer of 2015."  (Doc. 61 at 8.)  However, Plaintiff argues merely that the current Commissioner is aware of the practice regarding Halal diets and has allowed it to continue.  (*See* Doc. 38 at 10.)  He does not allege that any communications were provided to Menard, or that any lawsuits or other grievances were brought to the Commissioner's attention.  *See Guillory v. Haywood*, No. 9:13–cv–01564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) ("Furthermore, Plaintiff has failed to allege facts identifying the grievances, and lawsuits from which [Deputy Commissioner and Counsel] Boll allegedly learned of the violations of [Plaintiff's] constitutional rights and facts from which her awareness can be inferred.").  Commissioner Menard's "high position" in the DOC hierarchy is not enough for the Court to infer awareness and personal involvement.  *See Colon*, 58 F.3d at 874 ("The bare fact that [Commissioner] Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Accordingly, I recommend that the Court GRANT Defendants Pallito's and Menard's Motions (Docs. 30, 33) on the basis of lack of personal involvement, and dismiss Plaintiff's claims for monetary damages against Defendants in their personal capacities.

## VI.     Religious-Liberty Claims

Plaintiff's Complaint includes religious-liberty claims against Defendants pursuant to the Free Exercise Clause of the First Amendment and RLUIPA.  Specifically, Plaintiff alleges that both Pallito and Menard violated his and the proposed class members' First Amendment right to the free exercise of religion, and that Menard violated his and the other inmates' statutory rights under RLUIPA.  (Doc. 61 at 11–13.)  Defendants argue that these claims should be dismissed.  (Doc. 30 at 18–23; Doc. 33 at 17–23.)

### A.     Free Exercise Clause

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  "It encompasses both the 'freedom to believe and freedom to act on one's beliefs.'"  *Doe v. Mastoloni*, No. 3:14-CV-00718 (CSH), 2016 WL 593439, at *9 (D. Conn. Feb. 12, 2016) (quoting *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006)).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 (S.D.N.Y. 2015) (quoting *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)).  "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system."  *Ford*, 352 F.3d at 588 (alteration in original) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).

A prisoner bringing a free-exercise claim first "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006). "The Second Circuit define[s] a substantial burden as a situation where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, unlike imposing inconveniences so trivial that they are most properly ignored." *Hamilton v. Countant*, No. 13-CV-669(RA), 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) (alteration in original) (internal quotation marks omitted) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 202–03 n.4, 6 (2d Cir. 2004)).

If this threshold is met, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 275). Courts evaluate the "reasonableness" of defendants' actions under factors originally set forth in *Turner v. Safley*, 482 U.S. 78 (1987):

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Casey v. Pallito*, No. 5:12–cv–284, 2013 WL 6673623, at *5–6 (D. Vt. Dec. 18, 2013) (quoting *Salahuddin*, 467 F.3d at 274).

The First Amendment right to the free exercise of religion encompasses the right of prison inmates to a diet consistent with their religion: "inmates have a 'clearly established' right 'to a diet consistent with [their] religious scruples,'" *Holland v. Goord*, 758 F.3d 215, 221 (2d Cir. 2014) (alteration in original) (quoting *Ford*, 352 F.3d at 597), and "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free[-]exercise rights." *McEachin*, 357 F.3d at 203. When determining whether certain conduct has substantially burdened an individual's religious dietary beliefs, courts must "resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith." *Id.* at 201. "It is not within the judicial ken to question . . . the validity of particular litigants' interpretations of those creeds." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Rather, courts must assess whether the conduct at issue "burdens a religious practice that is 'central or important' to [the plaintiff's] practice of religion." *Ramrattan v. Fischer*, No. 13 Civ. 6890(KPF), 2015 WL 3604242, at *7 (S.D.N.Y. June 9, 2015) (quoting *Ford*, 352 F.3d at 593–94). "[D]emonstrating a substantial burden is not an onerous task for the plaintiff." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing *Fifth Ave. Presbyterian Church v. City of New York*, No. 01 Civ. 11493(LMM), 2004 WL 2471406, *3 (S.D.N.Y. Oct. 29, 2004)).

Defendants contend that even if Plaintiff could overcome the "personal involvement" hurdle, his allegations "fail to plausibly establish an infringement of his

28

First Amendment right to the free exercise of religion."[5]  (Doc. 30 at 18; Doc. 33 at 17.)

In particular, Defendants argue that Plaintiff has failed to allege that they substantially

burdened his religious exercise because, as a matter of law, strictly Halal diets are "not

required to accommodate [an inmate's] religious dietary restrictions."  (Doc. 30 at 20–21;

Doc. 33 at 19–20).  Plaintiff responds by arguing that the substantial burden test does not

apply; and even if it did, the deprivation of a Halal diet is a substantial burden, given that

"human beings must eat to survive."  (Doc. 38 at 11; Doc. 40 at 7.)  Plaintiff further

argues that Kosher meals are not acceptable as a substitute for Halal meals, and the Court

must accept this "dictate[] of [Plaintiff's] faith" because courts may not "rul[e] on what a

particular religion does or does not require."  (Doc. 38 at 13; Doc. 40 at 10.)

In the Second Amended Complaint, Plaintiff makes a series of diet-related

allegations.  For example, he alleges that at various prison facilities during specific time

periods, Plaintiff and other Muslim prisoners were receiving "Halal" meals in accordance

with their religion.  (*See, e.g.*, Doc. 61 at 3, 5, 8.)  He further alleges, however, that in

December 2014, "Halal-approved prisoners [at NSCF] began receiving prepackaged

meals that were clearly labeled 'Kosher,'" (*id.* at 3); in 2015, at NWSCF, "[i]nstead of

the Halal meals that were served there previously, [he] and other Muslim prisoners were

now given prepackaged meals . . . labeled 'Kosher'" (*id.* at 8); and upon his transfer back

to NSCF in Newport in 2015, Plaintiff and "other Muslim prisoners were given a

---

[5]  Neither Defendant contests the "sincerity and religiosity elements of a First Amendment free exercise claim."  (*See* Doc. 33 at 19.)  The Court may thus conclude that Plaintiff "has 'demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.'"  *DeJesus v. Bradt*, No. 6:13–CV–6066 EAW, 2016 WL 1266652, at *4 (W.D.N.Y. Mar. 31, 2016) (quoting *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003)).

pre[]packaged Kosher diet in place of Halal," a practice which "has continued" (*id.*).  As a result of these practices, Plaintiff alleges that many Muslim prisoners have "given up trying to eat in accordance with the dictates of their faith," and are "[f]orced to choose between alternatives, neither of which satisfies the requirements of their religion."  (*Id.* at 4.)  Plaintiff states that, after the December 2014 deprivation, he "began to abstain from eating anything except fruits and vegetables . . . because he could not be sure anything else was Halal," which resulted in him losing weight.  (*Id.* at 8.)

Along with these allegations, the Complaint sets forth certain differences between Halal and Kosher diets.  (*See, e.g.*, *id.* at 3, 4, 6.)  Most generally, Plaintiff states, "Jewish Kosher dietary restrictions, while similar in certain respects to the Halal dietary restrictions that apply to Muslims, are not the same" (*id.* at 3–4), and "Kosher meals are not a substitute for Halal" (*id.* at 4).

Here, the substantial-burden analysis presents a close question.  Although Plaintiff fails to provide specific examples of how the Kosher meals violate tenets of his religion—i.e., he does not allege that the DOC meals contain pork, certain additives, or other impermissible ingredients (*see id.* at 3–4)—it does appear from the Complaint that Plaintiff has interpreted Islamic creed to mean that "Kosher" food is not considered a valid substitute for a "Halal" diet (*id.* at 4).  And while in custody, Plaintiff received prepackaged "Kosher" meals.  (*Id.* at 3.)  The Court cannot question the validity of Plaintiff's religious belief or whether his interpretation of Halal dietary restrictions is correct.  *See Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996) ("[C]ourts are not permitted to ask whether a particular belief is appropriate or true—however unusual or

unfamiliar the belief may be."); *Ford*, 352 F.3d at 593 ("Neither the [U.S.] Supreme Court nor [the Second Circuit] . . . have ever held that a burdened practice must be mandated in order to sustain a prisoner's free[-]exercise claim.").  Moreover, showing a substantial burden is not "an onerous task" for Plaintiff, *Singh*, 520 F. Supp. 2d at 498, and at this early stage of the litigation, the Court must accept the Complaint's factual allegations as true and draw all reasonable inferences in Plaintiff's favor, *see Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014).  The allegations in the Second Amended Complaint, construed in Plaintiff's favor, "nudge" the substantial-burden claim "across the line from conceivable to plausible."  *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, No. 14 Civ. 4138(KPF), 2015 WL 4388421, at *2 (S.D.N.Y. July 17, 2015) (internal quotation marks omitted) (quoting *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)); *see also Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) (stating on a motion to dismiss that "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" (quoting *Twombly*, 550 U.S. at 583)).

Given that a substantial burden is plausible, "[t]he burden . . . shifts to the defendants to identify legitimate penological interests which justify the restriction of the plaintiff's free[-]exercise rights."  *Walker v. Artus*, 998 F. Supp. 2d 18, 26 (N.D.N.Y. 2014) (citing *Salahuddin*, 467 F.3d at 275).  Defendants have not identified a penological interest justifying the restriction of Plaintiff's free-exercise rights, nor have they noted any other legitimate reason for the alleged burden on Muslim prisoners' religious exercise.  Dismissal is therefore inappropriate.  *See JCG v. Ercole*, No. 11 Civ.

6844(CM)(JLC), 2014 WL 1630815, at *22 (S.D.N.Y. Apr. 24, 2014), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014) (concluding deprivation of Kosher meals "as alleged, amounts to a significant, nontrivial burden on Plaintiff's rights under the Free Exercise [C]lause such that, at least at this stage, the Court cannot recommend dismissal of the First Amendment claim against Rabbi Chill, particularly given Defendant's failure to offer any legitimate reason for denying kosher meals" (citing *McEachin*, 357 F.3d at 203)).

Lastly, Defendants argue that Plaintiff's *dissatisfaction* with the prepackaged Kosher meals "does not plausibly allege a substantial burden."  (Doc. 30 at 21; Doc. 33 at 21.)  They add that "Plaintiff's allegations . . . establish, at most, a *de minimis* inconvenience."  (Doc. 30 at 22; Doc. 33 at 22.)  Plaintiff does not directly counter this argument.  In any event, I decline to address it given my finding that Plaintiff has alleged a plausible substantial burden on his right to the free exercise of religion.

In sum, if the Court adopts the recommendation set forth above in Part V, *see supra* pp. 21–25 (finding no personal involvement of either Defendant), the free-exercise claims for money damages against Menard and Pallito in their individual capacities should be dismissed regardless of the free-exercise analysis in Part VI.  However, because personal involvement is only a prerequisite for claims for damages against officials in their personal capacities, *see Spavone*, 719 F.3d at 135, I recommend that, in light of the plausible substantial burden, the Court DENY Menard's Motion insofar as she seeks dismissal of Plaintiff's free-exercise claim for equitable relief against Menard in her official capacity.  Accordingly, the claim for equitable relief should proceed.

Alternatively, in the event that the Court does not adopt the recommendation in Part V, and finds that Plaintiff has sufficiently pleaded personal involvement of both Defendants, the Court should DENY Defendants' Motions insofar as they request the following: (1) dismissal of Plaintiff's free-exercise claims for equitable relief against Menard in her official capacity *and* monetary relief in her personal capacity, and (2) entry of judgment on the pleadings in Pallito's favor with respect to Plaintiff's free-exercise claim for money damages against Pallito in his personal capacity.[6]

## B.    RLUIPA

Next, Plaintiff claims that Defendant Menard violated his and proposed class members' statutory right under RLUIPA, and he seeks an injunction "requiring Commissioner Menard to provide them with a proper Halal diet that is consistent with the requirements of Islam."  (Doc. 61 at 13.)  Plaintiff states that "[t]he absence of a proper Halal diet substantially burdens the class members' free exercise of religion"; that

---

[6] Defendants argue that a strictly Halal diet is not required as a matter of law.  (Doc. 30 at 20; Doc. 33 at 19.)  As stated above, however, the free-exercise claim "is more properly addressed after discovery has been conducted."  *Loccenitt v. City of New York*, No. 12 Civ. 948(LTS)(MHD), 2013 WL 1091313, at *4 (S.D.N.Y. Mar. 15, 2013).  It is notable that most of the lower court cases cited by Defendants involve summary judgment motions, and the courts presumably had more evidence before them.  *See, e.g.*, *McMichael v. Pallito*, Civil Action No. 1:09–CV–130, 2011 WL 6012173, at *3–6 (D. Vt. Oct. 24, 2011), *report and recommendation adopted*, No. 1:09–cv–130–jgm–jmc, 2011 WL 6012091, at *1 (D. Vt. Dec. 1, 2011); *DeBlasio v. Rock*, No. 9:09–CV–1077 (TJM/GHL), 2011 WL 4478515, at *1 (N.D.N.Y. Sept. 26, 2011); *Smith v. County of Nassau*, No. 12–CV–4344 (SJF)(GRB), 2014 WL 2862849, at *1 (E.D.N.Y. June 18, 2014); *Cox v. Kralik*, No. 05 Civ. 5917(DLC), 2006 WL 42122, at *1 (S.D.N.Y. Jan. 6, 2006); *but cf. Walker v. Fischer*, No. 9:10–cv–01431 (MAD/DEP), 2012 WL 1029614, at *1 (N.D.N.Y. Mar. 26, 2012) (motion to dismiss).  For instance, the *Cox* court stated: "Defendants have submitted undisputed evidence that Muslim inmates are offered Kosher and vegetarian options for every meal.  Defendants have also submitted memoranda from two Muslim chaplains stating that it is permissible for Muslims to eat Kosher meals in the absence of Halal meals."  *Cox*, 2006 WL 42122, at *1 (footnote omitted).  At this early stage in the case, no such similar evidence has been considered by the Court.  Thus, Plaintiff's free-exercise claim is better resolved at a later stage, and Defendants' argument that strictly Halal meals are not required as a matter of law need not be addressed here.

Menard's inaction serves "[n]o compelling governmental interest"; and that, "[e]ven were the Commissioner's actions taken in furtherance of a governmental interest, the[y] [were] not the least restrictive means."  (*Id.*)  Menard responds by stating, "First Amendment free exercise based claims under § 1983 and RLUIPA" require Plaintiff to "plausibly allege that Menard imposed a substantial burden on his sincerely[]held religious beliefs." (Doc. 30 at 18.)

"As a general matter, the RLUIPA imposes duties on prison officials that exceed those imposed by the First Amendment."  *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009).  However, "[w]hether or not a prisoner sufficiently pleads a substantial burden on a sincerely held religious belief under RLUIPA involves the same threshold analysis as under the First Amendment."  *Lopez*, 136 F. Supp. 3d at 587.  Should the prisoner demonstrate a "substantial burden," the RLUIPA analysis then shifts the burden to the government:

> "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens [his or] her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest."

*Id.* at 587–88 (alteration in original) (quoting *Jova*, 582 F.3d at 415).

Because the threshold analysis for a purported RLUIPA violation is the same as that for a First Amendment free-exercise claim, I conclude that the Second Amended Complaint alleges a plausible "substantial burden" under RLUIPA as well.  In addition, Menard has not presented a compelling governmental interest for the alleged burden and presents no argument that the burden was the least restrictive way to achieve that interest.

34

Therefore, I recommend that the Court DENY Menard's Motion to Dismiss insofar as it seeks dismissal of Plaintiff's RLUIPA claim under Rule 12.

## VII.   Compensatory Damages

Defendants argue that Plaintiff's claims for compensatory damages are barred because Plaintiff fails to allege that he suffered from "more than merely a *de minimis* physical injury."  (Doc. 30 at 12; Doc. 33 at 11.)  Stated differently, Defendants assert that any personal claim against them for compensatory damages "is based solely on alleged mental or emotional injuries and is barred by 42 U.S.C. §[ ]1997e(e)."  (Doc. 33 at 11; *see also* Doc. 30 at 12.)  In the alternative, Defendants argue that Plaintiff "may not recover compensatory damages based solely on the abstract value of his allegedly violated First Amendment right to free exercise of religion."  (Doc. 30 at 14; Doc. 33 at 12–13.)

In response, Plaintiff argues that compensatory damage awards "remain available for violations of prisoners' First Amendment rights because the resulting harms are not mental or emotional injuries."  (Doc. 38 at 9; Doc. 40 at 5.)  Plaintiff also asserts that other class members, who were not incarcerated when the initial complaint was filed, are not constrained by the PLRA, and should have the opportunity to prove compensatory damages.  (Doc. 38 at 9–10; Doc. 40 at 5.)[7]

---

[7]  In support of this final assertion, Plaintiff cites *In re Nassau County Strip Search Cases*, 99-CV-2844 (DRH), 2010 U.S. Dist. LEXIS 99783 (E.D.N.Y. Sept. 22, 2010), a class action case where the named plaintiffs were not incarcerated at the time the suit was filed: "In sum, the Court holds that the PLRA's limitation of recovery does not apply where, as here, none of the named plaintiffs who brought the class action were incarcerated at the time the action was commenced."  *Id.* at *24–25.  The case is distinguishable from this one, however, given that Plaintiff *was* incarcerated when he filed suit.

The PLRA states, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ."  42 U.S.C. § 1997e(e).  "Section 1997e(e) is not a bar to suit, but instead operates only as 'a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury.'"  *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *6 (D. Vt. May 18, 2015) (quoting *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002)).  Under the PLRA, "'the injury must be more than *de minimis*, but need not be significant.'"  *Leon v. Johnson*, 96 F. Supp. 2d 244, 248 (W.D.N.Y. 2000) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

In *Thompson v. Carter*, the Second Circuit held that "Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury."  284 F.3d 411, 417 (2d Cir. 2002).  In *Toliver v. City of New York*, the Circuit clarified that, "under 42 U.S.C. § 1997e(e), a prisoner may not recover for mental or emotional injury suffered while in custody without a prior showing of physical injury."  530 F. App'x 90, 93 n.2 (2d Cir. 2013) (internal quotation marks omitted).  The Second Circuit explained: "[E]ven if Toliver is unable to establish that any of the injuries complained of in this action stemmed from an incident in which he suffered physical injuries, Toliver may still recover damages for injuries to his First Amendment rights, as well as nominal and punitive damages for any other constitutional violations."  *Id.*  The court further stated: "Because Section 1997e(e)

36

is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Id.* (quoting *Thompson*, 284 F.3d at 416).[8]

Plaintiff is not seeking compensation for mental or emotional injuries, but rather, for violations of his and the proposed class members' First Amendment right to the free exercise of religion.  (*See* Doc. 38 at 8, 9; Doc. 40 at 4, 5.)  I do not discern a compensable injury on the face of Plaintiff's Complaint, however.  *See Brown v. Dillion*, 28 F. App'x 77, 78 (2d Cir. 2002) ("In order to recover compensatory damages in an action under § 1983, a plaintiff must prove not only that his federal rights were violated but also that the violation caused him actual, compensable injury."); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978))); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986) ("[D]amages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages.").  I therefore recommend that the Court GRANT Defendants' Motions, insofar as Menard seeks dismissal of Plaintiff's claims for compensatory damages and Pallito seeks judgment on the pleadings on the same grounds.

---

[8]  Plaintiff cites various district court decisions to support his assertions that compensatory damages are available for a First Amendment violation and that *Thompson* does not control.  (Doc. 38 at 8; Doc. 40 at 4.)  In the absence of Second Circuit precedent, however, the Court cannot assess compensatory damages under an "exception" to the PLRA's limitation on recovery.  *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004).

## VIII.  Punitive Damages

Although Plaintiff does not seek punitive damages in his Complaint, he argues in his Responses that he is entitled to punitive damages because Defendants "knowingly deprived prisoners under [their] watch of their constitutionally required religious diet." (Doc. 38 at 14; Doc. 40 at 10.)  Defendants Pallito and Menard argue that, "to the extent that [Plaintiff] intends to request punitive damages . . . the facts alleged do not establish that [they] engaged in any conduct related to the alleged violation of the Plaintiff's constitutional rights."  (Doc. 30 at 24; Doc. 33 at 23.)  Defendants also assert that they did not act with any "evil motive or intent or a reckless or callous disregard for the Plaintiff's constitutional rights."  (*Id.*)

Punitive damages are available in § 1983 actions.  *McFadden v. Sanchez*, 710 F.2d 907, 910 (2d Cir. 1983).  In order to claim them, the plaintiff must show that the defendant's conduct was "'motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others.'"  *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  "To be entitled to an award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'"  *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999)).  Under the Federal Rules of Civil Procedure, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

38

Plaintiff does not allege any evil motive, conscious wrongdoing, or other condition of the mind of Pallito or Menard. Therefore, any claims for punitive damages should be dismissed, and the Court should GRANT Defendants' Motions on this basis.

## IX.    Qualified Immunity

Lastly, Defendants argue that they are entitled to dismissal of Plaintiff's claims based on the doctrine of qualified immunity. (Doc. 30 at 24; Doc. 33 at 24.) Specifically, they assert that Plaintiff has failed to allege a constitutional violation; and even if the Court finds a constitutional violation, "there is no basis on which the Court may conclude that the right allegedly violated was clearly established enough for [Menard or Pallito] to reasonably understand that [she or he] acted in a manner inconsistent with that right." (Doc. 30 at 25; Doc. 33 at 25.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Haynes v. Johnson*, 629 F. App'x 84, 85 (2d Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "In deciding qualified immunity, courts ask whether the facts shown [i] 'make out a violation of a constitutional right,' and [ii] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (brackets in original) (quoting *Pearson*, 555 U.S. at 232). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"

*Haynes*, 629 F. App'x at 85 (alterations in original) (quoting *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)).

Because I concluded above that Plaintiff has not sufficiently alleged Defendants' personal involvement, *see supra* pp. 21–25, Plaintiff's claims for money damages should be dismissed, and there is no need to address whether Defendants would be protected by the doctrine of qualified immunity with respect to these claims.  If that were not the case, however, I find it is premature to dismiss Plaintiff's claims for money damages—against Pallito and Menard in their personal capacities—based on qualified immunity.  The qualified immunity defense "faces a formidable hurdle when advanced on [a Motion to Dismiss]."  *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).  "Because the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6).'"  *Bernstein v. City of New York*, No. 06 Civ. 895(RMB), 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007) (alterations in original) (quoting *Walker v. Mendoza*, No. 00–CV–93(JG), 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).  Here, it appears that more factual development is necessary.  "Depending on what evidence is adduced through discovery, dismissal of plaintiff's claims against [Defendants] may be warranted on a properly supported motion for summary judgment, but at this point, dismissal on this basis as to [Defendants] is premature."  *See Rivera v. Fischer*, 655 F. Supp. 2d 235, 240 (W.D.N.Y. 2009).

Lastly, regarding Plaintiff's claim for injunctive and declaratory relief against Menard in her official capacity, qualified immunity does not apply: "[Q]ualified

40

immunity does not protect a public official against a claim for declaratory or injunctive relief." *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013). Thus, a determination regarding qualified immunity does not affect my finding that Plaintiff's injunctive- and declaratory-relief claims may proceed against Menard.

Accordingly, I recommend that Defendants' Motions be DENIED as premature insofar as Menard seeks dismissal based on qualified immunity and Pallito requests judgment on the pleadings based on the same doctrine.

## X.      Motion to Certify Class Action

As noted above, courts may rule on dispositive motions prior to resolving class certification. *See supra* p. 14. I do not consider the merits of Plaintiff's Motion to Certify Class Action here, but I do recommend its dismissal due to prematurity.

In the Motion to Certify Class Action (Doc. 41), Plaintiff argues that the proposed class of Muslim inmates satisfies the requirements of Federal Rule of Civil Procedure 23 and a class-action lawsuit is appropriate. (*Id.* at 3–10.) Plaintiff supports his Motion with Attorney David Bond's affidavit, which seeks to demonstrate the attorney's adequacy as class counsel. (Doc. 41-1.) In his Reply, Plaintiff adds that, "[i]n the alternative, Plaintiff requests that the Court stay decision on this Motion pending an opportunity for discovery." (Doc. 53 at 8.) Defendants contend that class certification is premature given Defendants' pending dispositive motions. (Doc. 46 at 3–4.) Additionally, they assert that Plaintiff has failed to meet Rule 23's requirements and class certification is not appropriate in this case. (*Id.* at 5–15.)

As stated above, the issue of class certification is separate from that of the sufficiency of Plaintiff's pleadings. *See* 5 *Moore's Federal Practice – Civil* § 23.61 (Matthew Bender 3d ed.). Moreover, "[a] decision about certification need not be made at the outset; a court should delay a certification ruling until information necessary to reach an informed decision is available." *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 370 (W.D.N.Y. 2013) (quoting *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 66–67 (N.D.N.Y. 2008)). The Supreme Court has stated that "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 161 (1982)). "[I]n conducting the 'rigorous analysis,' a 'district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met.'" *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, 290 F.R.D. 452, 457 (D. Vt. 2013) (quoting *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)); *see also Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D. 257, 262 (D. Vt. 2011). "Indeed a district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982); *see also Philip Morris Inc. v. Nat'l Asbestos*

*Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied." (alteration in original) (quoting *Sirota*, 673 F.2d at 571)).

Here, Plaintiff has filed the Motion to Certify Class Action before discovery has commenced.  Following the guidance of other courts in the Second Circuit, I conclude "that there is nothing to be gained by continuing or holding in abeyance a premature, undeveloped motion for class certification and allowing it to remain open on the docket indefinitely."  *Jennings v. Cont'l Serv. Grp., Inc.*, 314 F.R.D. 82, 85 (W.D.N.Y. 2016) (internal quotation marks omitted).  Accordingly, I recommend that the Court DENY Plaintiff's Motion to Certify Class Action (Doc. 41) without prejudice as premature. *See id.* ("If and when Plaintiff obtains the facts necessary to meet his burden of establishing that Rule 23's requirements have been met, Plaintiff may renew his motion for class certification.").

<u>Conclusion</u>

For these reasons, I recommend that the Court GRANT Defendant Pallito's Motion (Doc. 33), entering judgment on the pleadings in his favor and dismissing all claims against him.  I further recommend that the Court GRANT Defendant Menard's Motion (Doc. 30) in part and DENY it in part, ***permitting only the claims for injunctive and declaratory relief against her in her official capacity to proceed***.  More specifically, I make the following findings/recommendations, as stated above:

1. Plaintiff has sufficiently pleaded Article III standing.  Thus, Defendants' arguments regarding standing fail.  *See supra* pp. 18–20.

2. Plaintiff has failed to sufficiently plead Pallito's and Menard's personal involvement in the alleged constitutional violations.  Thus, the Court should GRANT Defendants' Motions on the basis of lack of personal involvement and dismiss Plaintiff's claims for monetary damages against Defendants in their personal capacities.  *See supra* pp. 23–25.

3. Plaintiff has sufficiently alleged a claim for a violation of his right to free exercise of religion under the First Amendment.  In the event that the Court adopts the recommendation in (2), the Court should DENY Menard's request to dismiss Plaintiff's free-exercise claim against her for equitable relief.  Alternatively, if the Court does not adopt the recommendation in (2), the Court should DENY both Defendants' requests to dismiss Plaintiff's free-exercise claims against them for equitable and monetary relief.  *See supra* pp. 30–33.

4. Plaintiff has sufficiently alleged a claim for a violation of his rights under RLUIPA.  Thus, the Court should DENY Defendant Menard's request to dismiss this claim.  *See supra* pp. 33–35.

5. Plaintiff has not pleaded a compensable injury caused by the alleged violation of his right to the free exercise of religion.  Thus, the Court should GRANT Defendants' Motions on these grounds and dismiss Plaintiff's claims for compensatory damages against Defendants.  *See supra* p. 37.

6.  Plaintiff has not pleaded a claim for punitive damages.  Thus, Defendants'
    Motions should be GRANTED on this basis and any punitive-damages claims
    should be dismissed.  *See supra* pp. 38–39.

Lastly, I recommend that the Court DENY Plaintiff's Motion to Certify Class
Action (Doc. 41), without prejudice as premature.

Dated at Burlington, in the District of Vermont, this 9th of August, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge
and all parties, written objections which shall specifically identify those portions of the
Report and Recommendation to which objection is made and the basis for such
objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).
Failure to timely file such objections "operates as a waiver of any further judicial review
of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16
(2d Cir. 1989).