UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Justin Russell,

        Plaintiff,

        v.                      Civil Action No. 5:15-cv-126-gwc-jmc

Andrew Pallito, Cynthia Mason,
Richard Bilodeau, Lisa Menard,
Michael Touchette, Robert Arnell,

        Defendants.

## **OPINION AND ORDER**
(Doc. 163)

On June 12, 2015, Plaintiff Justin Russell, a Muslim pretrial detainee under the supervision of the Vermont Department of Corrections (DOC), brought this action under 42 U.S.C. § 1983, on behalf of himself and a proposed class of Muslim prisoners, against Defendants former DOC Commissioner Andrew Pallito and Correctional Officers Cynthia Mason and Richard Bilodeau. (Doc. 1.) Russell later added former DOC Commissioner Lisa Menard as a Defendant (Doc. 21), and on July 18, 2019, he filed a Third Amended Complaint (TAC), adding as Defendants current DOC Commissioner Michael Touchette and Correctional Facility Operations Manager Robert Arnell (Doc. 166 at 2, ¶¶ 5–6). In the TAC, Russell alleges that a DOC policy implemented by Pallito and continued by Menard and Arnell denied Russell and other class members of a diet conforming to the requirements of their Muslim faith, thereby infringing on their constitutional right to the free exercise of religion. (*Id*. at 4, ¶¶ 15–17; *id*. at 13, ¶¶ 66–67.)

Presently before the Court is Russell's Motion seeking to exclude the testimony of defense expert Taysir Al-khatib. (Doc. 163.) Therein, Russell contends that Al-khatib's expert testimony regarding Islamic dietary law is irrelevant because the proper inquiry for purposes of his claim is whether his beliefs regarding Islamic dietary law are sincerely held, not whether they are correct as a matter of religious doctrine. (*Id.* at 2.) Defendants Pallito and Menard have filed an Opposition to Plaintiff's Motion, arguing that Al-khatib's testimony is both admissible and relevant because it will inform and assist the Court and jury in assessing Plaintiff's claims. (Docs. 164, 164-1.) The Court held a hearing on October 16, 2019.

For the reasons stated below, Russell's Motion to Exclude Testimony by Taysir Al-khatib (Doc. 163) is DENIED.

## Analysis

## I. Admissibility Under Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Although the proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the demands of Rule 702 are met, "the district court is the ultimate gatekeeper." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted), and the court has "broad latitude" to admit or exclude proffered expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 153 (1999). "[T]he Second Circuit [has] espouse[d] a particularly broad standard for the admissibility of expert testimony," *SEC v. Revelation Capital Mgmt., Ltd.*, 215 F. Supp. 3d 267, 275 (S.D.N.Y. 2016) (second and third alterations in original) (internal quotation marks omitted), where exclusion is "the exception rather than the rule." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (quoting Fed. R. Evid. 702 Advisory Comm. Note (2000)).

To determine whether the requirements of Rule 702 have been satisfied, the Court considers: (1) the proposed expert's qualifications; (2) whether the expert's opinion is based on reliable data and methodology; and (3) whether the expert's testimony will assist the trier of fact. *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005).

### A.     The Qualifications of Al-khatib

A witness is permitted to give opinion testimony if they are "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A lack of formal training or education will not operate to automatically disqualify an expert; rather, an expert's background and practical, professional experience may

qualify as specialized knowledge sufficient to regard the witness as an expert under Rule 702. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 Civ. 3040(KBF), 2014 WL 464769, at *2 (S.D.N.Y. Jan. 28, 2014); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 533 (E.D.N.Y. 2012).

Russell does not contest Al-khatib's qualifications as an expert, and the Court finds he is qualified. Al-khatib was raised in a Muslim home and he received Islamic schooling as a child. (Doc. 163-1 at 4.) From 1973 to 1987, Al-khatib served as an assistant chaplain in the Jordanian Air Force. (*Id.* at 5.) In 1987, he moved to the United States (New Hampshire), and two years later, he relocated to New York. (*Id.*) There, Al-khatib served as vice president of the local Islamic society and as a part-time imam. (*Id.*) In 1993, he moved to Vermont, where he became a founding member of the Islamic Society of Vermont. (*Id.*) At various times since then, Al-khatib has served as treasurer, vice president, president, and main imam for the Society. (*Id.*)

## B. Reliability of Al-khatib's Data and Methodology

Russell also does not contest Al-khatib's reliability. In determining this issue, the court considers "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (internal quotation marks omitted). The court conducts this evaluation with reference to the reliability factors identified by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993), but it must be observed that the *Daubert* criteria "do not lend

themselves" to fields of expertise not rooted in the "hard sciences." *Gonyea v. Irick Excavating, LLC*, Civil Action No. 2:08-cv-242, 2010 WL 11606973, at *4 (D. Vt. Nov. 30, 2010); *cf. Kumho Tire*, 526 U.S. at 153 ("[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."). Generally, while more than "subjective belief or unsupported speculation" is required, an expert need only have "good grounds" for his or her conclusions. *Daubert*, 509 U.S. at 590. Testimony that lies within "the range where experts might reasonably differ" should be admitted and left to the jury to assess. *Kumho Tire*, 526 U.S. at 153.

The Court remains mindful of its narrow, secular role in assessing the reliability of an expert's testimony regarding matters of religion. Here, there is no contention that Al-khatib lacks "good grounds" for his interpretation of Islamic dietary laws. He bases his interpretation on his learned understanding of the Quran and Sunnah, rooted in his years of experience and education, and avers that his interpretation is supported by other scholars. (Doc. 163-1, at 1; Doc. 163-2, 13:12–22, 27:25–28:10, 32:19–33:19, 112:10–113:15.) The Court finds Al-khatib's testimony reliable.

## C. Helpfulness of Al-khatib's Testimony to the Trier of Fact

Finally, expert testimony must be helpful to the trier of fact to be admissible. *Travelers Indem.*, 2014 WL 464769, at *3 (citing *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). In order to be helpful to the trier of fact, evidence must be

relevant as an initial matter. *Id.* (citing Fed. R. Evid. 401–03). Federal Rule of Evidence 401 defines evidence as relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As recognized by the court in *Daubert*, 509 U.S. at 587, Rule 401 prescribes a "liberal" standard of relevance, favoring admissibility. *See U.S. v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) ("[T]he definition of relevance under Fed. R. Evid. 401 is very broad."). *Daubert* describes the question of relevance as one of "fit," requiring a "valid scientific connection" between the expert's testimony and the relevant inquiry. *Daubert*, 509 U.S. at 591, 592.

Here, the sincerity of Russell's beliefs about Islamic dietary practice, the religious nature of those beliefs, and whether Defendants' actions substantially burdened those beliefs are central issues in this litigation and are therefore facts "of consequence." Fed. R. Evid. 401(b); *see Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (opining that evaluation of a plaintiff's sincerity is a question of fact); *Marria v. Broaddus*, 200 F. Supp. 2d 280, 292–93 (S.D.N.Y. 2002) (indicating the sincerity and religious nature of plaintiff's beliefs are issues of fact); *Brandon v. Kinter*, 938 F.3d 21, 36 n.11 (2d Cir. 2019) (implying that "substantial burden" is a question of fact for the jury); *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 291 (S.D.N.Y. 2009) (stating that whether an action is a substantial burden is a question of fact). To be relevant, Al-khatib's testimony must have "any tendency" to make at least one of those facts more or less probable. Fed. R. Evid. 401(a).

Herein lies the crux of Russell's argument: that because the inquiry definitionally focuses on the sincerity of *Russell's* belief regarding a halal diet, Al-khatib's testimony explicating *his* interpretation of a halal diet, as a religious leader in the community, is immaterial. (*See* Doc. 163 at 2–3.) Russell describes Al-khatib's testimony as "purporting to show that Mr. Russell's views of Islamic dietary practice are incorrect as a matter of religious doctrine," but argues that his claim "is not dependent on whether his views of Islam are correct within the eyes of any other individual." (*Id.* at 2.) More specifically, according to Russell, "[t]he question of whether Muslims may properly subsist on a kosher diet is essentially a question of religious interpretation," and "the validity of such interpretation is not a fact of any consequence in determining the action, and is therefore irrelevant." (*Id.* at 3.)

The Court recognizes Russell's concern regarding conflation of the sincerity and verity of his religious beliefs, and remains cognizant of its duty to refrain from adjudicating intra-faith disputes. *See Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314 n.7 (10th Cir. 2010) ("Neither this court nor defendants are qualified to determine that a [particular] diet *should* satisfy [plaintiff's] religious beliefs."). To be sure, a sincerely held religious belief will be accorded protection even if the belief is considered mistaken or incorrect by other adherents to the same religion. *See Jolly*

*v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996) (holding that court scrutiny of a claimant's religion "extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature"; "courts are not permitted to ask whether a particular belief is appropriate or true"). The Second Circuit explained: "courts have jettisoned the objective, content-based approach previously employed to define religious belief, in favor of a more subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system." *Ford v. McGinnis*, 352 F.3d 582, 589 (2d Cir. 2003) (quoting *Patrick*, 745 F.2d at 157). Therefore, the freedom to exercise religious beliefs is no longer "contingent on the objective truth of such beliefs" and "disagreement among sect members" will not preclude the finding of a free exercise violation. *Id.* (internal quotation marks omitted); *see DeHart v. Horn*, 227 F.3d 47, 56 (3d Cir. 2000) ("It would be inconsistent with a long line of Supreme Court precedent to accord less respect to a sincerely held religious belief solely because it is not held by others."). Applied here, Russell is correct that the validity of his claim does not depend on Al-khatib's testimony about "whether Muslims may properly subsist on a kosher diet." (Doc. 163 at 3.) *See Ford*, 352 F.3d at 590 ("The opinions of [the defendant's proffered] religious authorities cannot trump the plaintiff's sincere and religious belief.").

But that fact alone does not render Al-khatib's testimony about Islamic dietary requirements irrelevant as a matter of law, meaning lacking *any tendency* to make more or less probable the sincerity or religious nature of Russell's beliefs on

the topic. Rather, evidence that some members of Russell's religious community hold a contrary interpretation of Islamic dietary requirements may be valuable to a jury in assessing the sincerity or religious nature of Russell's beliefs as well as whether Defendants' actions substantially burdened those beliefs. *See, e.g., Abdulhaseeb*, 600 F.3d at 1314 ("In considering whether a practice is a 'religious exercise,' we certainly are not prohibited from referring to standard religious practice or interpretation."); *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002) ("A court may also consider whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying on a self-serving view of religious practice."); *see also Ford*, 352 F.3d at 593 ("Whether a particular practice is religiously mandated is surely relevant to resolving whether a particular burden is substantial."). In fact, Al-khatib's testimony that Muslims are required to maintain a halal diet may make it *more* probable to a jury that Russell's beliefs about what constitutes halal are religious in nature. While Al-khatib's testimony may be less probative regarding the sincerity of Russell's beliefs, the testimony is at least relevant under Rule 401's liberal standard. *See, e.g., Simmons v. Robinson*, No. 07 Civ. 7383(DAB)(DFE), 2010 WL 5538412, at *6 (S.D.N.Y. Jan. 28, 2010) (allowing testimony from imam about applicable Islamic dietary laws); *Abdul-Malik v. Goord*, No. 96 CIV. 1021(DLC), 1997 WL 83402, at *1–2 (S.D.N.Y. Feb. 27, 1997) (allowing testimony from Muslim chaplains about what foods are included in a halal diet).

Therefore, the Court finds that Al-khatib's testimony should not be excluded under Federal Rules of Evidence 401 and 702.[1]

## II.    Admissibility Under Federal Rule of Evidence 403

Al-khatib's testimony must also be analyzed under Federal Rule of Evidence 403, which permits exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." These dangers are enhanced in the context of expert testimony, due to "the unique weight that the factfinder may place on such testimony." *Doe v. Hartford Sch. Dist.*, Case No. 2:16-cv-00206, 2018 WL 1064572, at *4 (D. Vt. Feb. 26, 2018) (citing *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." (internal quotation marks omitted))). Nevertheless, "[i]n weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *SEC v. McGinnis*, No. 5:14-cv-6, 2015 WL 5643186, at *14 (D. Vt. Sept. 23, 2015) (quoting *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)).

As discussed above, Al-khatib's testimony has little probative value for the purpose of evaluating the sincerity of Russell's religious beliefs, but the testimony may be probative of whether Russell's beliefs regarding maintaining a halal diet are religious in nature. The Court again acknowledges Russell's reasonable concern regarding the risk of unfair prejudice against his interpretation of Islamic dietary

---

[1] The Court also notes that Al-khatib's testimony may be relevant to the issue of qualified immunity, which Defendants have raised as an affirmative defense. (Doc. 170 at 31, 33.)

requirements as well as the risk of confusing the issues of sincerity and accuracy. *See Patrick*, 745 F.2d at 157 ("[T]he factfinder's temptation to merge sincerity and verity is as great as the need to guard against this conjugation."). However, the Court cannot conclude that the probative value of Al-khatib's testimony is "*substantially* outweighed" by those risks, as required under Rule 403 (emphasis added). First, the notion that different members of the same religion can sincerely hold differing beliefs and interpretations is within the ordinary, reasonable juror's competence to comprehend. And second, in accordance with the "liberal thrust" of the Federal Rules of Evidence, *Daubert*, 509 U.S. at 588, the proper remedy for Russell's concern is not wholesale exclusion of Al-khatib's testimony, but rather, use of appropriate safeguards to guide the jury in the proper use of this testimony, including vigorous cross-examination, presentation of contrasting evidence, and a request for limiting instructions. *See, e.g.*, *Drake v. Allergan, Inc.*, Case No. 2:13–cv–234, 2014 WL 12717875, at *3 (D. Vt. Oct. 23, 2014) ("the cure . . . is cross-examination and competing testimony rather than exclusion"); Fed. R. Evid. 403 Advisory Comm. Note (1972) ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness . . . of a limiting instruction.").

Accordingly, Al-khatib's testimony should not be excluded under Rule 403.

## Conclusion

For these reasons, Russell's Motion to Exclude Testimony by Taysir Al-khatib (Doc. 163) is DENIED. Pursuant to 28 U.S.C. § 636(b)(1)(A), a party may object and

seek reconsideration of the denial of a non-dispositive motion by a magistrate judge by appeal to a district judge. The aggrieved party must show that the magistrate judge's ruling was clearly erroneous or contrary to law. Any objection must be filed within 14 days of service of this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 25th day of November 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge