UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Justin Russell,

      Plaintiff,

      v.                                   Civil Action No. 5:15-cv-126

Andrew Pallito, Cynthia Mason,
Richard Bilodeau, Lisa Menard,
Michael Touchette, Robert Arnell,

      Defendants.

## **REPORT AND RECOMMENDATION**
### (Doc. 178)

Plaintiff Justin Russell, a Muslim pretrial detainee under the supervision of the Vermont Department of Corrections (DOC), brings this action under 42 U.S.C. § 1983, on behalf of himself and a proposed class of Muslim prisoners, against Defendants former DOC Commissioner Andrew Pallito, Correctional Officers Cynthia Mason and Richard Bilodeau (Doc. 1), former DOC Commissioner Lisa Menard (Doc. 21), current DOC Commissioner Michael Touchette, and Correctional Facility Operations Manager Robert Arnell (Doc. 166 at 2, ¶¶ 5–6). Russell alleges that a DOC policy implemented by Pallito and continued by Menard, Touchette, and Arnell denied Russell and other class members of a diet conforming to the requirements of their Muslim faith, thereby infringing on their constitutional right to the free exercise of religion. (*Id*. at 4, ¶¶ 15–17; *id*. at 13, ¶¶ 66–69.)

Presently before the Court is Russell's Renewed Motion to Certify Class Action. (Doc. 178.) Russell's previous certification attempt proposed a class consisting of "all Muslim inmates within the custody of DOC who were offered . . . prepackaged kosher meals, from when DOC first began serving those meals in late 2014, to the present, who consider the content of those meals to be in conflict with their sincerely held religious dietary beliefs." (Doc. 141 at 2.) He has now redefined the proposed class to include "Muslim prisoners now or formerly in the custody of the Vermont [DOC] who maintain that the Halal dietary offering provided by the [DOC] since late 2014 violates their right to the free exercise of religion, and who seek a return to the Halal dietary offering made available to Muslim prisoners in the [DOC's] custody prior to that time." (Doc. 178 at 1.) In support of his Renewed Motion, Russell submits six affidavits of fellow inmates who aver that the DOC's prepackaged religious food policy conflicts with their religious beliefs regarding halal requirements. (Docs. 180-1–180-6.) To buttress his claims of commonality and typicality, Russell also cites several cases containing prisoner free exercise claims in which courts have certified class actions. (Doc. 178 at 4–5.) He seeks to certify the class under Federal Rule of Civil Procedure 23(b)(1)(A) or 23(b)(3). (*Id*. at 6–7.)

Defendants have filed an Opposition to Russell's Renewed Motion, arguing that "[n]othing of substance has changed" in Russell's most recent certification attempt and that he "has generally ignored the analysis of this Court" in its previous Report and Recommendation (R&R). (Doc. 186 at 1.) They assert that six

identical supporting affidavits is insufficient to establish numerosity and that
Russell has wholly failed to address ascertainability. (*Id*. at 4.) Defendants further
argue that the potential requirement that all proposed class members exhaust their
administrative remedies under the Prison Litigation Reform Act (PLRA) would
require the Court to conduct numerous "mini-hearings" to determine each proposed
member's compliance with the PLRA. (*Id*. at 6 (citing *Hawker v. Consovoy*,
198 F.R.D. 619, 633 (D.N.J. 2001)).)

In his Reply, Russell urges the Court to use "basic arithmetic" to find "a
prospective class of 46 disaffected Muslim inmates," extrapolating this number from
the seven identified proposed class members who are currently housed at the
Northwest State Correctional Facility (NWSCF), which holds "just [15%] of the
State's total inmate population at any given time." (Doc. 190 at 1.) Russell further
claims that the identities of potential class members could be quickly identified
upon post-certification discovery, and that other courts have certified prisoner free
exercise class actions without engaging in individualized inquiries regarding class
members' sincerity. (*Id*. at 2; Doc. 178 at 3.) Finally, Russell asserts that *Hawker* is
inapposite because, in that case, the issue of exhaustion of administrative remedies
was raised in the context of a proposed class action settlement, not certification of
the class itself. (Doc. 190 at 2–3.)

As explained below, because Russell's claims would require individualized
inquiries for each proposed class member, he has failed to satisfy his burden of
demonstrating that the class is ascertainable or meets any of the other criteria for

maintaining a class action.  I therefore recommend that Russell's Renewed Motion to Certify Class Action (Doc. 178) be DENIED.[1]

<u>Analysis</u>

## I.    **Legal Standard**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979).  As such, "[a] party seeking class certification must affirmatively demonstrate [its] compliance with [Federal Rule of Civil Procedure 23(a)]."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  As the party seeking class certification, Russell "bears the burden of establishing the existence of all four Rule 23(a) requirements, often referred to as the criteria of 'numerosity, commonality, typicality, and adequacy.'"  *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350 (E.D.N.Y. 2006) (quoting Fed. R. Civ. P. 23(a)); *see Wal-Mart Stores*, 564 U.S. at 350–51 ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." (internal quotation marks omitted)).  Russell must also demonstrate "through evidentiary proof" that the class satisfies at least one of the three provisions for certification found in Rule 23(b).  *Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*, 729 F.3d 108, 117 (2d Cir. 2013) (internal quotation marks omitted).  Finally, because he is seeking to maintain a class under Rule 23(b)(3), Russell must satisfy the "implicit requirement" that the proposed

---

[1]  No oral argument was held on this renewed motion.  *See* L.R. 7(a)(6) ("Motions are decided without oral argument unless scheduled by the Court.").

class be "ascertainable." *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (internal quotation marks omitted).

To determine whether Russell has met each Rule 23 requirement, the Court undertakes a rigorous analysis and considers all of the relevant evidence admitted at the class certification stage. *See Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D. 257, 262 (D. Vt. 2011). A plaintiff must offer "significant proof" in support of each Rule 23 criterion; "[w]here significant proof is lacking, class certification should be denied." *Id.* (internal quotation marks omitted). Ultimately, the court must "make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, . . . must resolve material factual disputes relevant to each Rule 23 requirement," and must find that each requirement is "established by at least a preponderance of the evidence." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (internal quotation marks omitted); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met.").

## II.    Implicit Requirement of Ascertainability

Russell attempts to certify his proposed class under Rule 23(b)(3). He must therefore satisfy the implicit threshold "ascertainability requirement," which requires a demonstration that the members of the proposed class are "readily identifiable." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation marks omitted). "The requirement of ascertainability, though not

expressly mentioned in Rule 23, is fundamental." *Hnot v. Willis Grp. Holdings Ltd.*, 228 F.R.D. 476, 481 (S.D.N.Y. 2005). A class is considered ascertainable only when it is defined by reference to objective criteria such that the court can determine who is in the class and bound by its ruling without conducting "a mini-hearing on the merits of each case." *In re Petrobras Sec.*, 862 F.3d at 266 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015)). When class membership depends on a subjective determination, such as the state of mind of prospective class members, the class is not ascertainable. *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ.4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003).

Here, Russell's newly defined proposed class does little more than amend the word choice used to define the prior proposed class; and these linguistic modifications fail to remedy the problems previously identified by this Court. (*See generally* Doc. 150 at 73–75.) As a practical matter, evaluation of whether a prisoner "maintain[s]" that the DOC's meal offering "violates their right to the free exercise of religion" (Doc. 178 at 1) necessitates the same analysis required to assess whether a prisoner "consider[s]" those meals "to be in conflict with their sincerely held religious dietary beliefs" (Doc. 141 at 2). Accordingly, the new class definition would still require the Court to engage in numerous individualized, fact-intensive inquiries to determine class membership. The Court would be forced to inquire into each proposed class member's subjective beliefs and determine whether each belief is "sincerely held" and "religious in nature." *Ford v. McGinnis*, 352 F.3d 582, 590

(2d Cir. 2003) (internal quotation marks omitted). The Court would then have to determine whether the DOC's meal offering substantially burdens *each class member's* beliefs. *Id.* In a case like this, where determining class membership relies on a subjective criterion and requires a mini-hearing on the merits of each case, the Court cannot find that the class is ascertainable.

Russell disputes that the Court would have to conduct "mini-trials" to determine class membership and points to several cases in which courts have allowed free exercise claims to proceed as a class action.[2] (*See* Doc. 190 at 1–2; Doc. 178 at 4–5.) However, the cited decisions either do not consider ascertainability[3] or fail to engage in thorough, meaningful analysis on the issue.[4] Accordingly, the Court finds these cases unpersuasive and concludes that Russell's proposed class is not ascertainable. Given this conclusion, the Court declines to address the parties' arguments regarding potential unascertainability due to the

---

[2] Notably, Russell's argument is largely regurgitated from his Objection (Doc. 151) to this Court's January 2019 R&R denying class certification (Doc. 150). That Objection has already been considered and rejected by the Court. (Doc. 161.)

[3] These cases include: *Dowdy-El v. Caruso*, No. 06–11765, 2012 WL 6642793 (E.D. Mich. Aug. 15, 2012); *Monroe v. Bombard*, 422 F. Supp. 211 (S.D.N.Y. 1976); *Lawson v. Wainwright*, 108 F.R.D. 450 (S.D. Fla. 1986); *Colon v. Passaic County*, Civil Action No. 08–CV–4439 (DMC), 2009 WL 1560156 (D.N.J. May 27, 2009); *Johnson v. Martin*, No. 2:00-CV-75, 2002 U.S. Dist. LEXIS 12550 (W.D. Mich. Apr. 29, 2002). Furthermore, the decisions cited in *Ackerman v. Nev. Dep't of Corr.*, No. 2:11–CV–00883–GMN–PAL, 2012 WL 3598282 (D. Nev. Aug. 16, 2012) (certified class per stipulation), and *Wilson v. Gunter*, 21 F.3d 1123 (10th Cir. 1994), do not contain any discussion of the Rule 23 class certification requirements whatsoever.

[4] The opinion in *Abdul-Malik v. Coombe*, No. 96 Civ. 1021 (DLC), 1996 WL 706914, at *2 (S.D.N.Y. Dec. 6, 1996), only cursorily considers the requirement of ascertainability. But more importantly, its reasoning—much like Russell's lament that, "[w]hile Defendants would be free to raise any relevant material that might undermine an individual class member's claim of religious sincerity, this is not the Spanish Inquisition" (Doc. 190 at 2)—seems to improperly invert the burden placed on plaintiffs to affirmatively establish compliance with the requirements of Rule 23. *See Wal-Mart Stores*, 564 U.S. at 350; *Bourlas*, 237 F.R.D. at 350. As such, the Court finds *Abdul-Malik* unpersuasive on the issue of ascertainability.

PLRA's requirement that prisoner plaintiffs must first exhaust their administrative remedies. *See, e.g., Hawker*, 198 F.R.D. at 633 ("[T]here is a significant risk that this class action would be barred by the PLRA because the Named Plaintiffs and class members may not have sufficiently exhausted administrative remedies.").

## III.    Explicit Requirements of Rule 23(a)

### A.    Numerosity

To maintain a class action, Russell must also establish that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although this requirement does not involve a rigid number, "joinder is 'generally presumed to be impracticable when a putative class exceeds 40 members.'" *Allen*, 279 F.R.D. at 263 (quoting *Menkes v. Stolt-Nielson S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010)). In assessing numerosity, a court may make "common sense assumptions," and a plaintiff need not provide a "precise quantification of their class." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (internal quotation marks omitted). "Nevertheless, bare assertions of numerosity are insufficient, and a plaintiff seeking class certification must reasonably estimate or provide some evidence of the number of class members to support the conclusion that the class is too numerous to make joinder practicable." *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 90 (D. Conn. 2001).

Here, in his Renewed Motion, Russell offers six identical Affidavits of Muslim inmates who allege the DOC does not make a halal diet available to them (*see* Docs. 180-1–180-6), as well as his own Affidavit declaring that "at least 85 Muslim

inmates" have told him that they reject the DOC's prepackaged kosher/halal meals because they are not in fact halal (Doc. 178-1 at 4, ¶ 11). Russell acknowledges that this statement is hearsay, but argues that he is "entitled to rely upon hearsay to support his claim of numerosity." (Doc. 178 at 2.) As discussed below, I disagree.

District courts in the Second Circuit are split on the issue of whether proffered evidence must be admissible under the Federal Rules of Evidence at the class certification stage. *Compare Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2018 WL 1830811, at *17–18 (E.D.N.Y. Feb. 8, 2018) (recommending Federal Rules of Evidence not apply at class certification stage), *with Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-cv-729 (BMC), 2019 WL 3037072, at *2–3 (E.D.N.Y. July 11, 2019) (stating Federal Rules of Evidence apply at class certification), *and Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 64–65 (E.D.N.Y. 2012) (same). Two decisions from the Eastern District of New York, *Harte* and *Lujan*, explicitly disagree on this issue. For the reasons articulated in a third case from that district, *Lanqing Lin*,[5] I find the analysis in *Lujan* to be the more persuasive, and conclude that Russell's statement must be admissible under the Federal Rules of Evidence to be considered in support of his request for class certification.

---

[5] The *Lanqing Lin* court concluded that "the reasoning in *Lujan*—which is based on the implications underlying persuasive Second Circuit and Supreme Court dicta—is more convincing than the reasoning in *Harte*—which is premised more on the number of cases that have decided otherwise rather than their rationale for doing so." *Lanqing Lin*, 2019 WL 3037072, at *3 n.3. It is also worth noting that the decision in *Harte* is a R&R, and the R&R's finding that the Federal Rules of Evidence do not apply at the class certification stage was not evaluated or adopted in the district court's subsequent Memorandum and Order. *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB) (RER), 2019 WL 3997351, at *10 n.14 (E.D.N.Y. Aug. 22, 2019) (granting summary judgment and declining to reach class certification motion).

As elucidated in *Lujan*, the Second Circuit has implicitly accepted that evidence proffered in support of a class certification motion must satisfy admissibility requirements. *Lujan*, 284 F.R.D. at 64 (citing *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 486 n.9 (2d Cir. 2008)). The Second Circuit has also observed that, "[a] district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Sec. Litig. (In re IPO)*, 471 F.3d 24, 42 (2d Cir. 2006). Because a district court cannot rely on inadmissible hearsay to determine threshold issues, such as jurisdiction, the *Lujan* court reasoned that the same must be true for Rule 23 motions for class certification. *Lujan*, 284 F.R.D. at 64 (citing *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 319 (E.D.N.Y. 2003)); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (finding that Rule 56, which requires admissible evidence at summary judgment stage, is relevant to jurisdictional challenge under Rule 12(b)(1)). The *Lujan* court also noted the Supreme Court's decision in *Wal-Mart Stores*, 564 U.S. at 354, indicating that the evidentiary standards for admissibility of expert opinions under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), apply at the class certification stage. *Lujan*, 284 F.R.D. at 64–65. It would be illogical, surmised the courts in *Lujan* and *Lanqing Lin*, "to apply only some of the Rules of Evidence to

10

class certification motions." *Lanqing Lin*, 2019 WL 3037072, at *3; *see Lujan*, 284 F.R.D. at 64–65.

Also noteworthy, the Supreme Court has directed that district courts conduct a "rigorous analysis" to determine whether Rule 23's requirements for class certification have been met; and "relaxed evidentiary standards would be inconsistent with this prescription." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015) (internal quotation marks omitted) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Accordingly, I find that the evidence Russell offers in support of his claim of numerosity must be admissible.

Yet Russell concedes that his statement that at least 85 fellow Muslim inmates have told him that they reject the DOC's prepackaged kosher/halal meals because they are not halal, is hearsay under Federal Rule of Evidence 801. (Doc. 178 at 2.) I agree that the statement is hearsay, given that Russell offers it for the truth of the matter asserted, i.e., to show that at least 85 other inmates share his religious belief. Russell offers no argument that the statement is definitionally not hearsay under Rule 801(d) or that it falls into one of the hearsay exceptions set forth in Rule 803 or 804. I find that none of these exceptions apply. The statement is thus inadmissible and may not be used to support Russell's claim of numerosity.

Once the hearsay statement is set aside, Russell is left with only his own Affidavit and the six identical supporting Affidavits. Seven individuals is too low a number to demonstrate that joinder would be impracticable. However, Russell contends that "basic arithmetic" will demonstrate that he has met the numerosity

threshold.  (Doc. 190 at 1.)  According to Russell, because the seven identified individuals are all housed at NWSCF, and NWSCF houses only approximately 15% of the State's inmates, extrapolation of this data suggests that there are approximately 46 prospective class members.  (*Id.*; Doc. 180 at 2.)  But while the Court is permitted to make "common sense assumptions," *Pecere*, 194 F.R.D. at 70 (internal quotation marks omitted), it is not common sense to assume that the inmates who share Russell's religious belief regarding the prepackaged kosher meal are proportionally dispersed among the DOC's correctional facilities.  Such baseless speculation cannot constitute significant proof that Russell has met the numerosity requirement for class certification.

Alternatively, Russell asks that the Court conditionally certify the class to allow an opportunity for discovery into the identities of the potential class members. The Court has "considerable discretion" regarding the amount of discovery allowed on class certification issues, *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 233 (2d Cir. 2006), and may limit discovery "in order to assure that a class certification motion does not become a pretext for a partial trial of the merits," *In re IPO*, 471 F.3d at 41.  Here, as discussed above, determining class membership would require inquiry into the merits of each claim.  Moreover, a proposed class with identified members will suffer infirmities regarding commonality and typicality, as described below.  Therefore, Russell's request for discovery regarding the proposed class should be denied.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (upholding denial of leave

for additional discovery to establish preponderance of the evidence on class

certification issues).[6]

### B.    Commonality and Typicality

Russell's Renewed Motion also fails to demonstrate the commonality and

typicality of grievances required to certify a class, as explained in the Court's

previous R&R.  (Doc. 150 at 77–80.)  "The commonality and typicality requirements

tend to merge into one another, so that similar considerations animate analysis of

Rules 23(a)(2) and (3)."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)

(citing *Falcon*, 457 U.S. at 157 n.13).  The commonality requirement mandates that

"plaintiffs' grievances share a common question of law or of fact."  *Id*.

"Commonality requires the plaintiff to demonstrate that the class members have

suffered the same injury."  *Wal-Mart Stores*, 564 U.S. at 349–50 (internal quotation

marks omitted).  It is insufficient to show "merely that they have all suffered a

violation of the same provision of law."  *Id*. at 350.  Rather, "[t]heir claims must

depend upon a common contention" that is "of such a nature that it is capable of

classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one

stroke."  *Id*.  As such, not every common question suffices; plaintiffs must pose a

common question that "will produce a common answer."  *Id*. at 352.  "Typicality, by

---

[6] The Court also denied such a request in its previous R&R, noting that the suggestion "misconceives the nature of the burden on a plaintiff moving for class certification: Russell must show that the requirements of Rule 23 have been met *before* the class can be certified."  (Doc. 150 at 77 n.27) (emphasis added).  *See, e.g., Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 91 n.5 (D. Conn. 2001).

contrast, requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Russell's current argument for commonality and typicality is substantively the same as the argument made in his previous class certification motion. Russell asserts that there is commonality in his proposed class because "[he] and his fellow Muslim inmates were all subjected to the same conduct when DOC switched, on a system-wide basis, to prepackaged 'kosher/halal' meals in late 2014 and early 2015." (Doc. 178 at 5.) Moreover, Russell contends that he has established typicality because, "[i]n terms of the food he was provided, there was nothing to differentiate [him] from other Muslim inmates"; and he is, "for all pertinent purposes, situated identically to every other member of the proposed class." (*Id.*) As before, however, Russell has not provided "significant proof"—required under *Allen*, 279 F.R.D. at 262—demonstrating that he has questions of law or fact in common with the proposed class members.[7] Russell's free exercise claim requires an individualized

---

[7] Russell fails to articulate or proffer any alleged common questions, and instead simply points to other cases that purportedly "present[] similar facts and legal theories" and that have granted class certification. (Doc. 178 at 4.) The Court is unpersuaded by these cases. Most of them were decided before the Supreme Court's instruction in *Wal-Mart Stores*, 564 U.S. at 350, that what matters most is common answers, not common questions; and thus most do not evaluate "the capacity of a class-wide proceeding to generate common *answers*." *Id.* (internal quotation marks omitted). The cited cases that were decided after *Wal-Mart Stores* fail to address the fact that the claims asserted focus on individual plaintiffs' sincerely held religious beliefs and require each individual plaintiff to show that his or her beliefs were substantially burdened by the defendants. *See, e.g.*, *Dowdy-El*, 2012 WL 6642793, at *5–6; *see also McCoy v. Aramark Corr. Servs.*, Case No. 16-3027, 2018 WL 1366267, at *9–10 (D. Kan. Mar. 16, 2018).

inquiry into *his and each other class member's* sincerely held religious beliefs and a determination of whether Defendants' actions substantially burdened *each prisoner's* beliefs. *See Ford*, 352 F.3d at 590. By definition, deciding these questions will not produce a "common answer" that will "resolve an issue that is central to the validity" of each class member's claims. *Wal-Mart Stores*, 564 U.S. at 350, 352. Rather, as the Court stated in its prior R&R, "whether or not the [DOC's] prepackaged food policy violated the proposed class members' religious rights depends on each member's personal beliefs and is not a common contention capable of class-wide resolution." (Doc. 150 at 79.) And absent admissible evidence that all of the proposed class members share his belief regarding halal requirements, Russell again fails to meet the typicality requirement. (*See id*. at 80.)

Russell's conclusory assertions regarding the commonality and typicality of his new proposed class do not constitute the "significant proof" required to certify a class. *See Davidson v. Yeshiva Univ.*, 555 F. Supp. 75, 78 (S.D.N.Y. 1982) ("Mere paraphrasing of [Rule 23] by conclusory allegations of commonality is insufficient.").

## C.    Adequacy of Representation

The Court previously found that Russell and his counsel would "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). (*See* Doc. 150 at 80–82.) Defendants offer no further challenge to the adequacy of Russell and his counsel's representation of the proposed class, and thus the Court's analysis of that issue remains unchanged.

## IV.    Rule 23(b)(1)(A)

As noted above, Russell seeks to certify his proposed class under both subsections (b)(1)(A) and (b)(3) of Rule 23.  (*See* Doc. 178 at 6–7.)  Rule 23(b)(1)(A) permits class certification where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  This subsection generally applies only in cases where the party opposing the class is obliged by law to treat members of the class alike (such as a utility acting toward its customers or a government imposing a tax), or where the party opposing the class must treat all members of the class alike as a matter of practical necessity (such as a riparian landowner using water as against downriver owners).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see Richards v. FleetBoston Fin. Corp.*, 238 F.R.D. 345, 353 (D. Conn. 2006) (noting that ERISA claims are well suited to class adjudication under Rule 23(b)(1)(A)).

Courts generally apply Rule 23(b)(1)(A) restrictively.  "The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)."  *Id.* (quoting *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984)).  In addition, class certification under Rule 23(b)(1)(A) is limited to claims for equitable relief.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 941765, at *6 (E.D.N.Y. Apr. 12, 2006).

16

Russell makes no argument as to why his proposed class merits certification under Rule 23(b)(1)(A), except that "the request for injunctive and declaratory relief represents the primary thrust of the case." (Doc. 178 at 6.) The proposed class, however, includes Muslim inmates who are no longer in DOC custody. (*Id.* at 1.) Clearly, these inmates lack standing to pursue claims for injunctive or declaratory relief in this case, as they are no longer affected by the challenged conduct, i.e., serving non-halal meals to Muslim inmates, and it is purely speculative whether they will again be in DOC custody and subject to the prepackaged meals. *See Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (stating that a plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way") (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

The proposed class of current Muslim inmates is also not well-suited to certification under Rule 23(b)(1)(A), given the individualization of each inmate's claims. Subsection (b)(1)(A) "considers possible prejudice to the defendants," *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2019 WL 275827, at *4 (S.D.N.Y. Jan. 22, 2019) (slip op.) (internal quotation marks omitted), and seeks to prevent a situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct," *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 284 (S.D. Ohio 1997) (internal quotation marks omitted). Such a situation is absent here, given that the proposed class members' claims are individualized, and thus different findings in separate

17

cases brought by Muslim inmates regarding the DOC's service of meals would not impair the DOC's ability to serve meals to the Muslim inmate population as a whole.

Therefore, Russell fails to demonstrate that his proposed class may be certified under subsection (b)(1)(A) of Rule 23.

## V.    Rule 23(b)(3)

Russell also fails to demonstrate that his proposed class may be certified under subsection (b)(3) of Rule 23.  In order to do so, Russell must establish "(1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Nextel Commc'ns Inc.*, 780 F.3d at 137 (quoting Fed. R. Civ. P. 23(b)(3)).  Russell has not met his burden of establishing these elements by a preponderance of the evidence.

### A.    Predominance

Rule 23(b)(3)'s predominance requirement is "even more demanding" than Rule 23(a)'s commonality requirement.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *see Amchem Prods.*, 521 U.S. at 623–24 ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . , the predominance criterion is far more demanding.").  "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized

proof will be needed to establish each class member's entitlement to relief." *Nextel Commc'ns Inc.*, 780 F.3d at 138 (internal quotation marks omitted).  The predominance inquiry centers on "whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.*

Here, no generalized evidence could be offered to prove the elements of a free exercise claim on a class-wide basis.  A prisoner bringing a free exercise claim must establish (1) that he or she has a sincerely held religious belief, and (2) that this belief was substantially burdened by the defendant's actions.  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).  To determine the sincerity of each prisoner's belief, the inquiry will inherently delve into his or her subjective beliefs, which by definition are not "generalized." *Ford*, 352 F.3d at 590.  Similarly, deciding the "substantial burden" question will require individualized consideration of how burdensome the defendant's actions are on *each particular prisoner's* belief.  *Id.* Accordingly, because individual issues predominate over common ones, Russell has failed to meet the predominance requirement of Rule 23(b)(3).  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (concluding that predominance is not established where "certification of the class will not negate the need for a series of mini-trials").

## B.   Superiority

Russell also fails to meet Rule 23(b)(3)'s superiority requirement, which states that a class action must be "superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining

superiority, courts should consider four factors: (1) the interest of the class members

in maintaining separate actions; (2) "the extent and nature of any litigation

concerning the controversy already begun by or against class members"; (3) "the

desirability or undesirability of concentrating the litigation of the claims in the

particular forum"; and (4) "the likely difficulties in managing a class action." *Id.*

at (b)(3)(A)–(D). Here, a class action is not a superior method of adjudicating

Russell's claims because, as discussed above, the individual nature of each proposed

class member's claim would require a litany of mini-trials, resulting in management

problems and inefficiencies. *Cf. In re Nassau Cty. Strip Search Cases*, 461 F.3d 219,

230 (2d Cir. 2006) (finding class action superior where "individualized inquiries will

be few and far between"). Consequently, Russell has failed to carry his burden for

class certification under Rule 23.

## Conclusion

For these reasons, I recommend that Russell's Renewed Motion to Certify

Class Action (Doc. 178) be DENIED.


Dated at Burlington, in the District of Vermont, this 18th day of

December 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).